HOPKINS *et al. v.* THE FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY.

The power conferred upon a railroad company "to take," "for obtaining gravel and other material, as much land as may be necessary for the proper construction, operation and security of its railroad," as conferred by paragraph 4 of section 9 of the general act for the incorporation of railroads, includes the power to condemn for the purposes indicated; and is itself a power which in the exercise of the right of eminent domain the General Assembly may lawfully confer upon a railroad company. The power thus conferred authorizes the appropriation of such land lying outside of the right of way of such railroad, for the purpose of obtaining such gravel and other material, as may be "necessary to the proper construction, operation and security of its railroad," and the statute conferring the power is not in conflict with the constitution of this State.

July 8, 1895. By two Justices.

Appeal. Before Judge Falligant. McIntosh superior court. November term, 1894.

*Gignilliat & Stubbs,* for plaintiff in error.

*Alex. A. Lawrence* and *Clifton & Fraser,* contra.

ATKINSON, Justice.

This case is here upon a writ of error from the judgment of the judge of the superior court, overruling a demurrer. It appears from the record, that under the general act for the incorporation of railroads, approved October 21st, 1891, a charter was granted to the Florida & Northern Railroad Company. Its charter was afterwards amended under the general act approved December 17th, 1892, it thereby obtaining all the rights which might accrue to, and subjecting itself to all the liabilities imposed upon, railroads chartered under that act. Afterwards it was merged into and consolidated with the Florida Central & Peninsular

Railroad Company, a corporation which appears to have been incorporated under the laws of the State of Florida, and thereafter it assumed the name of the Florida corporation. A proceeding was begun by the defendant in error to appropriate to its use certain lands of the plaintiffs in error lying contiguous to its right of way, it being alleged that such appropriation was necessary for the purpose of securing gravel, sand, ballast and other material necessary for the construction, operation and security of its line of railroad situated in this State. Assessors were appointed under the provisions of the act above referred to, for the purpose of assessing the sum to be paid as compensation to the plaintiffs in error for their damages resulting from the appropriation of their property to the use of the railroad company; and from the report of the assessors the plaintiffs in error appealed. When the case was reached in the superior court, the plaintiffs in error demurred upon the following grounds: (1) Said proceedings are illegal and void, because the statute grants no power to said railroad to condemn land for the purpose of procuring ballast. (2) Said proceedings are illegal and should be dismissed, because the law under which said railroad seeks to condemn said land is unconstitutional, in so far as it seeks to grant the power to condemn said land outside of the right of way.

The railroad company bases its claim of the power to appropriate the property in question to the uses stated, upon paragraph 4 of section 9 of the act of 1892 (see Acts 1892, p. 42). By the terms of that section of the act referred to, it is provided that railroad companies incorporated under its provisions shall have power "to lay out its road not exceeding in width 200 feet, and to construct the same, and for the purpose of cuttings and embankments and for obtaining gravel and other material, to take as much land as may be necessary for the proper construction, operation and security of its road, . . making compensation therefor as pro-

vided by this act for property taken for the use of such company."

. With respect to the first ground of the demurrer of the plaintiffs in error, the contention seems to be that the maximum quantity of land which the corporation is authorized to appropriate under the act in question is the 200 feet, and that while it may appropriate as much land within this limit as may be necessary for the purposes mentioned in the act, an attempt to appropriate land other than such as lies within the 200 feet for the accomplishment of the purposes stated in the act, is *ultra vires*. Upon this point the parties seem to be at issue; for on the other hand, it is the contention of the defendant in error that the statute gives it the power not only to appropriate to its use 200 feet for laying out its road and for the ordinary uses of the company, but that for the purpose of obtaining gravel, sand and other material, such as may be necessary for the proper construction, operation and security of its road, it may appropriate other lands.

In determining exactly what the meaning of a statute is, the prime consideration should be to ascertain the legislative intent; and in seeking for that intent, we will first address ourselves to the language employed by the legislature in the expression of its purposes. If the language be clear and unambiguous, there is no room for interpretation, but it is the duty of the courts to give expression to the obvious meaning of the General Assembly. It is always helpful, however, in the construction of statutes, to bear in mind the subject-matter concerning which the legislative body is speaking. Statutes of this kind, involving the exercise of the right of eminent domain, and the consequent appropriation of the property of the owner to public uses, must be strictly construed, and will not be extended beyond the express words or the necessary implications of the statute conferring the power.

Looking to the terms of the act in question, giving the

words employed by the General Assembly their ordinary signification, there is little room to doubt that the General Assembly intended to confer upon the railroad company incorporated under this act the right not only to lay out its right of way 200 feet in width, but likewise the right to appropriate to its own use, upon just compensation, for the purposes for which this condemnation proceeding was instituted, lands other than those embraced within the 200 feet limit. Had the legislative purpose been to limit the right of appropriation to such land only as lay within the 200 feet, it would not have employed the general terms appearing in the statute, but on the contrary would have stated, "and for the purpose of cuttings and embankments and for obtaining gravel and other material," to take as much land *within the said 200 feet* as may be necessary, etc. The words actually employed authorize the appropriation of the 200 feet, and in addition thereto, such other land as may be necessary, etc. In the construction of such statutes, the following is laid down as a correct rule by a standard author upon the subject, and is to be found in Lewis on Eminent Domain, section 279: "It is the province of the legislature to determine the quantity as well as the estate which may be taken for public use. If the quantity is specified, or a maximum prescribed, no more can be taken. If the authority permits the acquisition of as much as may be necessary, or in still more general terms confers the power to condemn property for the purposes of the undertaking, it will be construed to authorize the taking of so much as may be reasonably necessary under the circumstances." See also cases cited by the author.

Applying this rule to the present case, it will be observed that the statute gives, first, the power to lay out its road not to exceed in width 200 feet, and it would seem that this would exhaust the power of the corporation to appropriate land for the purpose of laying out its road, because, by the terms of the act, the amount authorized to be appropriated

for this purpose is limited to 200 feet in width; but with respect to the matter of making cuttings and building embankments, if, in the course of the construction of its road, it became necessary to build an embankment sufficiently high to require a base greater than 200 feet in width, or to make a cut requiring a width greater than 200 feet at the top, there is ample authority for the appropriation of land in addition to that authorized to be appropriated in the first instance. Under ordinary circumstances, 200 feet in width is all that the railroad company would be authorized to appropriate for laying out its road; but if the exigencies of the particular situation required that it appropriate more than this for the special purpose of cuttings and embankments, then other property necessary to this use may be appropriated. So if in the course of the construction of the railway it becomes necessary in order to obtain gravel and any other material which reasonably might be necessary to the proper construction, operation and security of the road, under the provisions of the same act, as much land, in addition to the 200 feet in width, may be appropriated as shall be necessary.

Looking at the whole act under which this company was incorporated, it will be observed that the same general language is employed in conferring power to acquire all such real estate or other property as may be necessary in the construction, operation and maintenance of said railroad and the stations, wharves, docks, terminal facilities and all other accommodations necessary to accomplish the object of said corporation, and to condemn, lease and buy any land necessary for its use. See paragraph 3, section 9, Act 1892, p. 42. Here the power to condemn property for depots and other terminal facilities is given in the same terms as those employed in the paragraph which gives the power to condemn for material, the limitation in each being that only so much as is necessary shall be taken; and surely it will not be contended that the power to appropriate land for wharves,

docks and terminal facilities is intended to be confined within the 200 feet limit, and it is equally unreasonable to suppose that the legislature intended that the corporation in procuring material to construct the road should be confined to the narrow limits of 200 feet. It will be observed further, referring to section 11 of the act in question, that while the same method is prescribed for condemning property for each of the other purposes indicated in the act, yet the act distinguishes "right of way" from each of such other purposes. If the contention of the plaintiffs in error be well founded, and it should develop that in the progress of the work of construction it was impossible to obtain material sufficient within the 200 feet limit to construct the road, then the very end sought to be accomplished by the General Assembly in the grant of the charter would be defeated by the limitations imposed upon the power of the corporation by the charter itself; and we cannot presume that any such purpose was designed by the General Assembly.

We come now to consider whether the power conferred by the General Assembly to appropriate land lying outside the right of way of the railroad for the purpose of obtaining gravel and other material necessary to the proper construction, operation and security of the road can, conformably to the constitution of this State, be conferred by that body upon a railroad company. The constitution of the United States provides that private property shall not be taken for public use without just compensation. The constitution of the State of Georgia, paragraph 1, section 3, article 1, code section 5024, provides that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid. Sections 2222, 2223, 2224 and 2225 of the code recognize the right of eminent domain and provide the manner of its exercise, and reserve to the State the power in the exercise of the right of eminent domain to reassert, either temporarily or permanently, its dominion over any portion of the soil of the

State, and authorize the legislative appropriation of the same to public purposes, enumerating certain public purposes, amongst others, including the opening of roads and private channels for trade or travel. It is made the province of the General Assembly to judge of the exigencies which may require the exercise of the right, and the only limitation imposed upon this power is a denial of the right, under the pretext of public necessity, to appropriate the property of one person to the private use of another. It is provided in express terms that the legislature may either exercise this right directly through the officers of the State, or through the medium of corporate bodies, or by means of individual enterprise. If the code were not clear and unambiguous upon this subject, whatever doubt may have arisen as to the power of the General Assembly in the premises, has been resolved by the judgment of this court; for it was early held that it was the province of the legislature to determine what objects are or are not of such public importance as to justify them in appropriating property. See 3 *Ga.* 338. In the same case it was held, that the appropriation of private property to a railroad company for the purpose of building a railroad under the right of eminent domain conferred by its charter, was the exercise of that power for a public use; and by the same decision of this court, it was held that the State could lawfully delegate the power to corporations chartered, like railroad companies, for a great public use. The doctrine of this decision has been steadily adhered to and approved, but this court has never hesitated, where, under the guise of a public use, the legislature has attempted to confer upon a corporation the power to appropriate the property of one person for the private use of another, to declare such statute inoperative and void. Accordingly, it was held in the case of *Loughbridge* v. *Harris*, 42 *Ga.* 501, that while, in a general sense, grist-mills and the like were public and their tolls and the

v 97-8

manner of rotation among customers regulated by law, they were not public in the sense that the legislature could lawfully authorize the appropriation of private property for their construction as for a public use. On the contrary, however, our courts have uniformly held that the right of eminent domain was lawfully exercised when the power was conferred upon railroad companies, in the construction of these great channels of travel, to appropriate private property for their necessary uses.

The statute now under consideration authorizes only the appropriation of property necessary to the construction, operation and security of its road. On the face of the declaration the property sought to be appropriated is alleged to be necessary for those purposes. The purpose being public, and the allegation being that the appropriation was necessary, which latter fact the demurrer admits, the court did not err in overruling it.          *Judgment affirmed.*