26863.   BARTON et al. v. ATKINSON et al.
26864.   ATKINSON et al. v. BROWN et al.

Argued December 14, 1971—Decided March 9, 1972.

*Jones, Bird & Howell, Earle B. May, Jr., Eugene T. Branch,* for appellants (case No. 26863).

*Michael Padnos, Webb, Parker, Young & Ferguson, Guy Parker,* for appellees.

*Michael Padnos,* for appellants (case No. 26864).

*Jones, Bird & Howell, Earle B. May, Jr., Webb, Parker, Young & Ferguson, Guy Parker,* for appellees.

*Lokey & Bowden, John A. Nix,* amicus curiae.

HAWES, Justice. The appeal here is from the grant of an injunction restraining the defendant-owners from taking any action to implement zoning ordinances enacted by the defendant Commissioners of Fulton County and from performing any construction, grading, tree cutting, or any similar or related activity with respect to several described tracts of land as purportedly authorized by said ordinances. Involved are several tracts of land which were separately treated by the commissioners in the ordinances passed on July 16, 1971. The plaintiffs complain because the ordinances rezoned all of the tracts involved from a higher to a lower use, in general, permitting more intensive use of the land. The trial court, in the order and judgment appealed from, held the ordinances invalid on the basis of one specific attack made by the plaintiffs, and expressly rejected other grounds of attack. The owners of the property sought to be rezoned appealed, and the adjoining landowners filed a cross appeal complaining of those portions of the final judgment which ruled adversely to their other contentions respecting the validity of the zoning ordinances. The specific nature of the contentions will be dealt with more fully in the opinion.

The plaintiffs in the trial court are residents of Fulton County and owners of property located within 300 feet of the property which is the subject of the zoning ordinances under attack. The defendants named in the complaint are the Commissioners of Fulton County, the Director of the Department of Inspections and Licenses of Fulton County, all sued in their official and individual capacities, Charles Barton, Nautilus North River Realty Inc., and George H. Johnson, Powers Ferry Land Company, and F. H. Gilgore, Jr., the latter three d/b/a North River Partnership. The

property involved is adjacent to the intersection of Northside Drive and Interstate Highway 285 in North Fulton County. Extensive tracts comprising in excess of 100 acres of land, and lying to the north and south of Interstate Highway 285 and to the west of Northside Drive abut the Chattahoochee River. The evidence in the record before us shows that this land, in its natural state, is extremely rugged, being composed of steep ridges and deep valleys with differences in elevation approaching 300 feet. In 1968, Barton and his associates sought to have this property rezoned for various uses, including apartments of high and medium density, offices, institutional and commercial uses. The application which was then filed touched off a storm of protests and organized opposition by residents in the area, including the plaintiffs here, which ultimately resulted in substantial modification of the proposal and the grant of the application only after its modification so as to permit only lower density uses. Contemporaneously with the 1968 rezoning, and as a condition precedent thereto, the Commissioners of Fulton County required Barton to execute a document denominated a "Declaration and Covenant of Restrictions for North River Development." The content of this instrument, insofar as is material and necessary to an understanding of the rulings made will be set out in Division 2 of the opinion.

It appears that it was only after the county commissioners determined that they would approve the rezoning of the property in question subject to the restrictions embodied in this instrument that the residents and owners of property in the area desisted from their opposition to the rezoning in 1968. Plaintiffs contend that the 1968 zoning and the restrictive covenant excluded apartments from the area lying to the north of Interstate Highway 285, and that the rezoning here has reintroduced apartments into that area contrary to the 1968 zoning and restrictive covenant, and that the reclassification of the land prior to January 1, 1988 (the date to which the covenant is declared to run) was a violation of the covenant and, therefore, void. Such other conten-

tions and the facts necessary to a clear understanding of the rulings made will be stated in the opinion.

■ By the Act approved April 10, 1971 (Ga. L. 1971, p. 3662) the legislature changed the zoning procedures in counties having a population of 500,000 or more persons, of which Fulton County is one, so as to require the director of the planning departments of such counties to furnish a copy of each application for rezoning to the public works department, the department of public health and the board of education of such counties. The Act provides: "Each department in such counties . . . shall render a report detailing the effect the zoning change will have on the operation of their respective departments. Each department in such counties . . . shall submit a report to the board of commissioners . . . and to the joint zoning boards *which shall be read at each public hearing.* Each departmental report shall become a permanent part of the zoning application in such counties . . . Each department submitting a report to the board of commissioners . . . and the joint zoning boards shall contain certain information concerning the effect of the zoning change on the schools, sewerage service and streets in such counties . . ." Ga. L. 1971, p. 3663. (Emphasis supplied.) The trial judge found as a fact that the reports required to be rendered by the Fulton County Board of Education, the Fulton County Public Works Department and the Fulton County Department of Public Health under the provisions of the above quoted law were submitted by each of said departments with respect to each of the parcels of property sought to be rezoned. He also found that the reports of these departments with respect to each parcel of land sought to be rezoned were read by the zoning administrator of Fulton County, Georgia, at the public hearing held before the Atlanta-Fulton County Joint Planning Board on June 30, 1971. He further found, however, that while these reports were filed in the office of the Clerk of the Board of Commissioners of Fulton County, as a part of the petitions in each case such reports were not in fact read at the public hearing held by the Board of Commissioners of Fulton

County on July 7, 1971, at which time the zoning applications were considered, nor was the substance or a summary of said reports read or stated, nor was the recommendation or findings or conclusions contained therein read or stated, nor was the effect of the zoning changes applied for on the operation of said departments read or stated. Based on this finding he concluded as a matter of law that the zoning ordinances were invalid because of the failure to strictly comply with the procedural requirements embodied in the Act and based on those findings and conclusions of law he restrained the defendants from putting into effect said zoning ordinances or taking any action pursuant thereto. That judgment and order is the subject matter of the direct appeal.

It would seem that, ordinarily, the requirement of the Act that the reports of the Board of Education, the Public Works Department and the Department of Public Health of the county "shall be read at each public hearing" would be unambiguous and admit of no construction, for the general rule is that where "the language of a statute is clear, direct, and positive, leading to no absurd results, and affording a suitable, if not a sufficient remedy for an existing evil, courts should be governed by the obvious meaning and import of its terms." *Ezekiel v. Dixon,* 3 Ga. 146 (2); *Hopkins v. Fla. Central &c. R. Co.,* 97 Ga. 107, 109 (25 SE 452); *Gazan v. Heery,* 183 Ga. 30, 39 (187 SE 371, 106 ALR 498). But, this rule should not be applied so as to obscure the real purpose of judicial construction of statutes as embodied in the Cardinal Canon of Construction which is to ascertain the legislative intent. *Erwin v. Moore,* 15 Ga. 361, 364; *Board of Tax Assessors v. Catledge,* 173 Ga. 656 (1) (160 SE 909); *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 467 (62 SE2d 209).

"To give effect to the intention of the legislature, courts are not controlled by the literal meaning of the statute, but the spirit or intention of the law prevails over the letter thereof. *Erwin v. Moore,* 15 Ga. 361; *Roberts v. State,* 4 Ga. App. 207 (60 SE 1082). Where the letter of the statute re-

sults in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute. Where the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the results and consequences. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." *New Amsterdam Cas. Co. v. Freeland,* 216 Ga. 491, 495 (117 SE2d 538), and cits; *City of Jesup v. Bennett,* 226 Ga. 606, 609 (176 SE2d 81). In arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the legislature sought to correct in enacting the new law and the remedy provided therefor. *Board of Tax Assessors v. Catledge,* supra, p. 659; *Gazan v. Heery,* supra, p. 40.

So, this court has held that language contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act. *O'Neal v. Spencer,* 203 Ga. 588 (47 SE2d 646); *Middleton v. Moody,* 216 Ga. 237 (2) (115 SE2d 567). In *McLendon v. Everett,* 205 Ga. 713, 717 (55 SE2d 119), the late Justice Head quoted approvingly the rule set forth in 50 AmJur 49, Statutes, § 26, that "a statutory provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result." A related statement of the rule and more directly pertinent to the question before us in this case is contained at 82 CJS 873, Statutes, § 376, which reads: ". . . A statute is regarded as directory where no substantial rights depend on it, no in-

jury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results. On the other hand, a provision relating to the essence of the thing to be done, that is to matters of substance, is mandatory, and when a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the Act or proceeding, or when some antecedent or prerequisite conditions must exist prior to the exercise of power or must be performed before certain other powers can be exercised, the statute must be regarded as mandatory."

How, then, stands the statute which we have before us when viewed in the light of these rules of statutory interpretation? The statute directs that a copy of each application requesting a zoning change shall be furnished to the Board of Education, the Public Works Department and the Department of Public Health in order that those departments may report to the authority charged with the duty of enacting amendments to the zoning ordinance as to the effect such proposed changes shall have on the operation of their departments. It is obvious that the vice sought to be corrected by this statute is the passage of amendments to the zoning ordinances by the Board of Commissioners without their taking into account in their deliberations the effect the proposed change will have on the operation of these departments. The essence of the law is the requirement that the commissioners or other body having the responsibility of enacting such legislative changes in the zoning ordinance shall be furnished such information prior to acting on the proposed changes. The reading of these reports at the public hearings is not of the essence of the law. The furnishing of the information to the law-making body is of the essence. This is so because the Act is completely silent as to any requirement that such reports be read at each public hearing as a prerequisite of the authority of the Board of Commissioners to act. It does not expressly declare

that a failure to read the reports will render any action taken void. Furthermore, to construe the Act as requiring the reading of such reports at each public hearing would unduly hamper the Board of Commissioners in the performance of their duties and would unnecessarily lengthen such hearings if it were necessary for the Board of Commissioners to read the reports of each of such departments in every case acted upon by it. No useful purpose could be served by requiring the silent reading of such reports by the members of the Board of Commissioners during such public hearings, since it will be presumed that, where such reports are shown to have been made a part of the record before the Board of Commissioners at the time they took the action, they were aware of the contents of such reports.

We, therefore, hold that the failure of the board to read the reports of the Board of Education, the Public Works Department and the Department of Public Health of Fulton County was not such a defect in procedure as would invalidate the action of the board in rezoning the property in question. The record shows that these reports were filed prior to the public hearing held before the Atlanta-Fulton County Joint Planning Board on June 30, 1971, and were subsequently filed in the clerk's office of the Board of Commissioners as a part of the petitions to rezone the properties. Whether the appellees knew of these reports or of their contents is immaterial, since, as we have held, the purpose of the reports is to inform the officials charged with the duty of acting on the applications to rezone. Admittedly, these reports were adverse to the action taken and would have tended to support the arguments of the appellees. However, even if the appellees were not informed of the existence of these reports or of their contents at the time of the public hearing before the Board of Commissioners, the only harmful effect the lack of such information could have had would have been to deny them the opportunity to have included in their argument to the Board of Commissioners the reasoning behind these reports in support of their opposition. This is not such a substantial right

as would authorize the court to set aside the rezoning on account of its denial. It follows that the trial court erred in setting aside the zoning ordinances involved in this case which were passed by the Board of Commissioners on July 7, 1971, and the judgment complained of on the main appeal must consequently be reversed.

■ We now turn to the questions presented by the cross appeal. As we have already noted, the cross appellee Barton sought to have a portion of the property involved here rezoned in 1967 and 1968. As one of the conditions to granting the rezoning in 1968 the then Board of Commissioners required Barton to execute the "Declaration and Covenant of Restrictions for North River Development" referred to in the statement of facts. This instrument was executed by Barton on April 18, 1968, with the formality of a deed and was recorded by the Clerk of the Superior Court of Fulton County and indexed as a deed record in his office. In it Fulton County is named as a party "for the purpose of enforcing these covenants" and is authorized thereby to proceed in law or in equity to require compliance on the part of any violator of the covenants. Also, authorized to enforce it are the owners of any land or buildings or interest therein included within the area subject to the covenant. The right of such owners to enforce the covenant is restricted to the owners within the use area where the violation or threatened violation occurs. "For example, if a violation of these covenants occurs in the village center area, these covenants may not be enforced by anyone other than an owner of property in the village center area, etc., and Fulton County." Barton, who is therein denominated as the "Covenantor" and described as the owner of the property to which the covenant relates, declared and covenanted that the property was then held and should thereafter be held and occupied subject to the restrictions set forth therein, and he declared the instruments to be a covenant running with the land and to "remain in effect until January 1, 1988, unless altered or modified as hereinafter provided." It provides "the requirements listed herein shall not be altered,

changed, or varied except after approval by the Commission of Fulton County or any governmental agency to which the powers of government in such matters may devolve and agreement by the owners." Its purpose was declared to be "to protect the owner or lessee of each parcel of said property against improper development . . . , to prevent the erection on said property of structures built of improper materials, to encourage the erection of attractive improvements at appropriate locations, to prevent haphazard and inharmonious improvements, to secure and maintain proper setbacks from streets and adequate free spaces between structures, and in general to provide adequately for high-type and quality of improvement of said property in accordance with a general plan." The instrument deals extensively and in detail with the restrictions applicable to each type of use, generally imposing upon the owner more severe restrictions than those imposed by the zoning ordinances.

It will thus be seen from the foregoing summary of its provisions that, regardless of what motivated its execution, and regardless who the parties had in mind to benefit thereby, the instrument as finally drawn and filed shows on its face that it was intended to "inure to the benefit of and pass with each and every parcel of said property [described therein] and shall apply to and bind the heirs, assignees and successors in interest of any owner thereof," and had as its purpose the protection of the owner or lessee of each parcel of said property described therein. By its very terms it excluded from its protection all others. In this regard it is unambiguous and admits of no construction, and the courts are bound by and must give effect to its terms unless to do so would violate some rule of public policy. Thus, it will be seen that adjoining or neighboring landowners who were not parties to the instrument, and who are neither owners, lessees or tenants of any parcel of property covered by the instrument have no standing to enforce the same.

■ In the covenant Barton expressly retained the right to modify it "after approval by the commission of Fulton County." He undoubtedly had this right. *Thompson v. Glen-*

*wood Community Club,* 191 Ga. 196 (12 SE2d 623); *Davis v. Miller,* 212 Ga. 836 (96 SE2d 498); *Roberts v. Carlos,* 213 Ga. 662 (100 SE2d 735). The record shows that Barton and others applied to Fulton County for the rezoning of the property covered by the covenant. The Fulton County Commission approved such rezoning. It would be a strained construction and interpretation of these events, indeed, to say, as is contended by the cross appellant, that these actions do not constitute an agreement by the owners and approval by the county commission of changes in the covenant to the extent that such amendments to the zoning ordinances in fact change the covenant. It is fundamental that rezoning is legislative in nature and that one county commission cannot deprive or restrict a succeeding commission in the exercise of its legislative power by the device of entering into a contract or agreement purporting to limit the authority of the county commission to legislate in this regard. To the extent that it is contended by the cross appellant that the covenant here involved operates as a restriction on the authority of the County Commission of Fulton County to rezone the property in question, such contention is without merit. See *Code* § 69-202; *Southern Airways Co. v. DeKalb County,* 102 Ga. App. 850, 860 (118 SE2d 234). This ruling does not conflict with the ruling of this court in *Mayor &c. of Waynesboro v. McDowell,* 213 Ga. 407 (99 SE2d 92). Involved in that case was a legislative restriction on the power of a municipality to *rezone* after once having zoned an area. Such legislative restriction is not here involved.

■ The cross appellants contend that the failure of the county to strictly comply with the requirements of the zoning ordinance respecting service by mail on all property owners within 300 feet of the subject property of notice of the proposed rezoning voids the zoning ordinances which are here under attack. This contention is based upon the undisputed fact that one of the nearby property owners, Col. Andrew Meulenberg, was not served by mail with notice of the proposed rezoning as required by Art. XXVIII,

Sec. III (2) of the zoning ordinance of Fulton County. However, the record shows without dispute that prior to the final action of the county commission on the proposed rezoning Col. Meulenberg came to the office of the Zoning Engineer of Fulton County and inquired as to the proposed rezoning. The zoning engineer, after checking as to the reason for the failure to notify Col. Meulenberg and finding that it was apparently due to an error in the tax records of Fulton County, in that they failed to list him as the owner of property within 300 feet of the proposed rezoning, then asked Col. Meulenberg if he wished a notice to be mailed to him. The zoning engineer's affidavit in this regard then continues. "Col. Meulenberg then replied that it would not be necessary for affiant to do so, since affiant had handed to Col. Meulenberg during their interview a copy of said written notice. To the best of affiant's knowledge Col. Meulenberg read said written notice, retained it and left affiant's office with said notice." This was sufficient to authorize the court to find that Col. Meulenberg had waived service of the notice and waived strict compliance with the requirements of the zoning ordinance. Accordingly, the contention in this regard is without merit and the trial court did not err in overruling such contention.

■ The final contention of the cross appellants is that the zoning ordinance of July 16, 1971, is arbitrary and capricious and, therefore, void. As we have already noted, zoning is strictly a legislative function of the body having the power to zone. Whether or not a particular application to rezone will be granted or denied rests solely within the discretion of the Board of Commissioners of Fulton County. So long as the procedural requirements of the law are complied with, the courts will not undertake to control the exercise of that discretion in the absence of a clear showing of an abuse thereof. *Addis v. Smith,* 225 Ga. 157 (1) (166 SE2d 361). Counsel for the cross appellants have recognized this principle at the outset of their argument with respect to this ground of enumerated error, and further state that they recognize that in embarking upon an effort to set aside

the zoning ordinances on this ground that they are waging an uphill fight. We need say only that they have not succeeded, for there is no clear showing in the record before this court that the county commission abused its discretion in rezoning the property here in question.

It follows that none of the grounds of enumerated error made on the cross appeal is meritorious and the judgment appealed from on cross appeal must be affirmed.

*Judgment reversed on main appeal; affirmed on cross appeal. All the Justices concur.*