A98A1130, A98A1131. THEBAUT v. GEORGIA BOARD OF
DENTISTRY; and vice versa.
(509 SE2d 125)

BEASLEY, Judge.

The Georgia Board of Dentistry commenced an administrative proceeding to sanction Dr. Thebaut, a pediatric dentist, based upon his proposed treatment of two children. Following a lengthy hearing, the administrative law judge issued an initial decision against the Board, holding the evidence did not support a finding that Dr. Thebaut's actions fell below minimal standards of acceptable and prevailing dental practice. The Board, on its own motion, elected to consider the case itself. After a hearing in which only Dr. Thebaut testified, the Board in the final decision adopted all but one of the ALJ's findings of fact and all of his conclusions of law. Substituted was its finding that with regard to one patient Dr. Thebaut's recommendations fell below the requisite standards. The Board ordered that Dr. Thebaut be sent a letter of concern and that the matter be closed.

Citing among other things lack of evidence, Dr. Thebaut sought judicial review by the superior court, which affirmed. Dr. Thebaut's discretionary appeal is Case No. A98A1130. The Board's cross-appeal, Case No. A98A1131, contests the trial court's jurisdiction.

1. Of first order, raised by Dr. Thebaut (Case No. A98A1130), is whether the Board had lost the power to act for failure to comply with OCGA § 50-13-17 (c), because its written decision was rendered more than 30 days following the close of the record, without an express extension. This is not a question of judicial, but rather of administrative, jurisdiction.

The statute does not state that review is foreclosed if such is not done, nor, unlike OCGA § 50-13-17 (a), does it state that failure to render the final Board decision within the prescribed period means that the ALJ's initial decision becomes the final decision by operation of law. The legislature directed: "Each agency shall render a final decision in contested cases within 30 days after the close of the record required by Code Section 50-13-13 except that any agency, by

order, may extend such period in any case in which it shall find that the complexity of the issues and the length of the record require an extension of the period, in which event the agency shall render a decision at the earliest date practicable."[1] The Board's decision was rendered considerably later than 30 days following the close of the record, although it had not formally exercised its expressly provided discretion to extend the time.

*Safety Fire Commr. v. U.S.A. Gas*[2] held that the 30-day requirement in OCGA § 50-13-17 (c) "is directory, not mandatory." Failure of the fire commissioner to comply with the time requirement did not invalidate his decision. The case relied upon, *Collins v. Birchfield*,[3] had explained that although "shall" ordinarily is a word of command, "in the absence of injury to the defendant and in the absence of a penalty for failure to comply with the statute, ' "shall" denotes simple futurity rather than a command.' [Cit.]"[4] Although *Collins* is non-precedential, the principle quoted is. *Collins* also upheld a late decision even though the controlling statute allowed a late decision only if both parties consented, which they did not.[5] *Commr. of Ins. v. Stryker*[6] followed this same rationale to hold that OCGA § 33-2-23 (a), requiring the insurance commissioner to issue an order within 30 days after the hearing, was only directory and did not invalidate a late order.

This rationale arises out of OCGA § 1-3-1 (c), which provides: "A substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." To invalidate an agency decision or action, the statute must explicitly state such is the penalty for noncompliance.[7] "This provision of statutory construction has been applied in many cases to statutes which provide that certain acts must be performed by public officials within specified periods of time."[8]

---

[1] OCGA § 50-13-17 (c).

[2] 229 Ga. App. 807, 809-810 (5) (494 SE2d 706) (1997).

[3] 214 Ga. App. 144, 146-147 (447 SE2d 38) (1994) (physical precedent only).

[4] Id. at 146.

[5] See OCGA § 50-13-12 (b).

[6] 218 Ga. App. 716, 719-720 (8) (463 SE2d 163) (1995).

[7] See, e.g., OCGA § 50-13-17 (a) (failure to appeal initial decision of ALJ within 30 days automatically makes that decision the decision of the agency); *Pine Timber Trucking Co. v. Teal*, 230 Ga. App. 362 (1) (496 SE2d 270) (1998) (under workers' compensation statute, OCGA § 34-9-105 (b), agency decision is automatically affirmed by operation of law if court does not enter order within 20 days of hearing).

[8] *Clayton County v. Evans*, 258 Ga. 146, 147 (366 SE2d 282) (1988). It is the predecessor to this statute which governed the statutory construction undertaken by the Supreme Court in *Barton v. Atkinson*, 228 Ga. 733, 738-739 (1) (187 SE2d 835) (1972). It relied upon two

In keeping with this statute, it has long been a principle of Georgia statutory construction that "statutes directing the mode of proceeding by public officers, designated to promote method, system uniformity, and dispatch in such proceeding, will be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute does not declare what result shall follow noncompliance."[9] The two indications are harm and express cessation of authority. Based on this principle, failure to conclude a hearing within sixty days,[10] failure of a recount committee to meet within forty-eight hours of their appointment,[11] and appointment of a public officer three days before the authorized period[12] did not invalidate the agency decision or action.

We similarly hold that because no harm is shown nor authority withdrawn, the Board's written decision on Dr. Thebaut beyond the time prescribed in OCGA § 50-13-17 (c) was not void for want of jurisdiction. Nevertheless, the agency should aggressively endeavor to meet the time allotted so as to fulfill the purpose expressed, which is to achieve expedition so as to serve the public's interest.

## Case No. A98A1131

2. Next addressed is whether judicial review was available. The Board argues that its final decision did not aggrieve Dr. Thebaut and thus was not subject to judicial review.[13] The Board reasons that a letter of concern is not a form of disciplinary action and is not disclosed to anyone but Dr. Thebaut.[14]

OCGA § 50-13-19 (a) provides: "Any person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial

---

earlier cases which quoted the predecessor statute directly. The principle with respect to certain official action being required within a particular statutory time was apparently first applied in *Horkan v. Beasley*, 11 Ga. App. 273, 276-278 (75 SE 341) (1912), and involved judicial action. This Court determined that the statute's requirement was directory, not mandatory, even though the statute used the word "shall." On the other side of the scale, the legislature has provided that when it uses the word "may," it sometimes means "must" or "shall." OCGA § 1-3-3 (10).

[9] (Citations and punctuation omitted.) *Jordan v. State*, 223 Ga. App. 176, 182 (2) (477 SE2d 583) (1996); *State of Ga. v. Battise*, 177 Ga. App. 583, 584 (340 SE2d 240) (1986); *Lang v. State*, 168 Ga. App. 693, 696 (4) (310 SE2d 276) (1983); *Hardison v. Fayssoux*, 168 Ga. App. 398, 400 (309 SE2d 397) (1983); *Collins v. Nix*, 125 Ga. App. 520, 524 (1) (188 SE2d 235) (1972); *Southern Security Co. v. American Discount Co.*, 55 Ga. App. 736, 740 (191 SE 258) (1937).

[10] *Hopping v. Cobb County Fair Assn.*, 222 Ga. 704, 706 (2) (152 SE2d 356) (1966).

[11] *Middleton v. Moody*, 216 Ga. 237, 241 (2) (115 SE2d 567) (1960).

[12] *O'Neal v. Spencer*, 203 Ga. 588 (2) (47 SE2d 646) (1948).

[13] See OCGA § 50-13-19 (a).

[14] See OCGA § 43-1-19 (j).

review under this chapter." The Board does not dispute that Dr. Thebaut has exhausted all administrative remedies nor that he was involved in a contested case that resulted in a final decision. Because Black's Law Dictionary defines "aggrieved" as having suffered injury or loss, the Board argues that Dr. Thebaut would suffer no injury or loss by receiving a private letter of concern.[15]

*Ga. Power Co. v. Campaign for a Prosperous Ga.*[16] defines "aggrieved" as used in this statute more broadly than does Black's Law Dictionary. "In the context of the Administrative Practice Act, the word 'aggrieved' has been interpreted to mean that the person seeking to appeal must show that he has an interest in the agency decision that has been specially and adversely affected thereby. [Cit.]"[17]

Dr. Thebaut had a professional interest in the Board's decision that criticized his actions and ordered he be sent a formal letter of concern. Detrimental official action condemning professional judgment offends professional pride and self-confidence, has a chilling effect on the recipient's approach to his practice, and constitutes a negative entry in the records of the professional's governing agency, regardless of the alleged non-public nature of the letter's contents. The court did not err in exercising jurisdiction over his petition for judicial review.

The Board's argument that OCGA § 43-1-19 (j) mandates otherwise is hollow. Under this subsection,[18] any agency board may, without holding a contested case hearing, issue private reprimands or letters of concern, deny reciprocal licenses, deny requests for reinstatement of revoked license, and refuse to issue previously-denied licenses. OCGA § 43-11-47 expands the possible "no hearing" actions by the Georgia Board of Dentistry to include denials of applications to use a particular corporate or trade name and denials of licenses on grounds other than those enumerated in OCGA § 43-11-47 (a). Normally these preliminary or summary actions would follow the Board's initial investigative inquiry into a matter. They are among the less severe actions available to the Board[19] and do not trigger any rights of the licensee or applicant to demand the full hearing and accompanying panoply of rights guaranteed by the Geor-

---

[15] See Black's Law Dictionary, p. 60 (5th ed. 1979).

[16] 255 Ga. 253 (336 SE2d 790) (1985).

[17] Id. at 257 (2).

[18] Except as provided in OCGA § 43-1-19 (o), the provisions of OCGA §§ 43-1-16 through 43-1-24 apply to the Georgia Board of Dentistry, despite the somewhat duplicative provisions found in OCGA § 43-11-47 and other sections of Chapter 11 of Title 43. OCGA § 43-1-25.

[19] See OCGA § 43-1-19 (d).

gia Administrative Procedure Act ("APA").[20]

If the Board decides the possibility for more severe action exists, it then engages in a "contested case," which is a proceeding in which the rights, duties, or privileges of a party must be determined by the agency after an opportunity for the hearing described in OCGA § 50-13-13.[21] Following the hearing, the Board issues a final decision in which it exonerates the individual or imposes severe or light sanctions, or no sanctions at all.[22] The Board cannot strip the final decision of its judicial reviewability by imposing a lighter sanction, such as issuing a private reprimand or a letter of concern. Regardless of the nature of the sanctions imposed, the final decision is still a "final decision in a contested case" and is therefore "entitled to judicial review under" the APA.[23]

Thus, the statement in OCGA § 43-1-19 (j) that a letter of concern "shall not be considered a disciplinary action or a contested case" refers only to the ability of a board, if it so chooses, to issue such a letter without conducting a contested case hearing and making the entire case public. But if a board decides to conduct such a hearing, the matter then becomes more public and involved and subject to the full "contested case" provisions of the APA. The fact that the final decision happens to be that the board imposes a lesser sanction such as the issuance of a letter of concern does not exempt that decision from judicial review.

Other jurisdictions agree with this analysis. *Murphy v. Bd. of Med. Examiners &c.*[24] held that under Arizona law a letter of concern normally is nondisciplinary, is issued only as a result of an investigation finding insufficient evidence to support disciplinary action, and does not come after an adjudicatory hearing. Accordingly, "issuance of a letter of concern is not a final decision subject to review before the agency or superior court. [Cits.]"[25] An appellate court in Colorado agrees.[26]

The Georgia Board conducted an adjudicatory hearing, made findings of fact justifying discipline, and issued a final decision ordering the letter as a result. The absence of these factors precluded judicial review in Arizona and Colorado; their presence in this case makes judicial review available.[27]

---

[20] See, e.g., OCGA §§ 50-13-1, 50-13-13; cf. OCGA § 43-11-48 (a) (contested cases before the dentistry board are to be decided in accordance with APA).

[21] See OCGA § 50-13-2 (2).

[22] See OCGA § 43-1-19 (d), (e).

[23] OCGA § 50-13-19 (a).

[24] 949 P2d 530 (Ariz. App. 1997).

[25] Id. at 538.

[26] *Colorado Bd. of Med. Examiners v. B. L. L.*, 820 P2d 1190 (Colo. App. 1991).

[27] Compare *In the Matter of Daw*, 910 P2d 752, 754-755 (Idaho 1996) (private repri-

The appellee Board's claim that the letter of concern was nondisciplinary and merely a private matter and not subject to judicial review fails for two reasons. First, it is hardly a private nondisciplinary matter when the Board conducts a full hearing before the ALJ, reviews the matter again in a public hearing, and issues a public decision orally and in writing finding the doctor's actions to be below the standard of care and to justify the sending of a letter of concern. Second, private or not and disciplinary or not, the letter of concern is not being appealed here; it is the Board's final decision after a contested case hearing that is being appealed.

The court did not err in exercising jurisdiction over the case.

### Case No. A98A1130

3. Dr. Thebaut claims the evidence did not support the Board's amended finding that his actions fell below the minimal standards of acceptable and prevailing dental practice. He argues the Board relied solely on its own review of the physical evidence to judge his actions and had no expert testimony to support a finding of inappropriate care.

OCGA § 50-13-19 (h) (5) provides that a court may reverse an agency's decision if the agency's findings are "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ." *Hall v. Ault*[28] construed this language to mean that the agency's findings must be upheld if there is any evidence in the record to support them.[29]

The Board as a party presented only the deposition testimony of Dr. Stewart (an orthodontist) and the patient x-rays and dental molds he examined to support its substituted finding that Dr. Thebaut's recommendation of the use of certain devices to correct some mild crowding of one child's lower teeth fell below minimal standards. But Dr. Stewart did not so testify. He testified only that in his opinion the "treatment was not indicated." He conceded that his opinion was nothing more than a philosophical difference with Dr. Thebaut (a pediatric dentist), and that the decision whether to recommend these devices in this child was purely a clinical judgment. He further admitted that he reached his conclusion that "treatment was not indicated" without referring to any textbooks, and that the learned treatises in the area recommended the use of such devices as

---

mand following adjudicatory hearing is judicially reviewable even though not specifically provided in rules).

[28] 240 Ga. 585, 586 (242 SE2d 101) (1978).

[29] See also *Safety Fire Commr. v. U.S.A. Gas*, supra, 229 Ga. App. at 809 (2); *Hicks v. Harden*, 133 Ga. App. 789, 790 (2) (213 SE2d 49) (1975).

an option to correct mild crowding, as was present in this child.

On the other hand, Dr. Thebaut called four well-credentialed dentists, all of whom testified without equivocation that Dr. Thebaut's recommendation was clearly above minimal dentistry standards. These included Dr. Adair, Chairman of the Department of Pediatric Dentistry at the Dental School of the Medical College of Georgia; Dr. Bench, a Diplomate in the American Board of Orthodontics since 1970 and well-known lecturer on dentistry with 33 years of experience; Dr. Samson, dual-trained in pediatric dentistry and orthodontics and a professor at the University of Tennessee and the University of Alabama; and Dr. Lugus, Board Certified in Pediatric Dentistry.

In light of this strong evidence, the ALJ found Dr. Thebaut acted appropriately. On review, the Board rejected this portion of the ALJ's decision and found that based on its own review of the "physical evidence" (presumably the x-rays and the dental molds), the preponderance of evidence supported a finding that Dr. Thebaut's actions fell below minimal standards. Curiously, it nevertheless adopted the ALJ's conclusion of law that Dr. Thebaut had conformed with appropriate standards.

The Board found Dr. Thebaut had acted below the minimal standards despite the absence of any expert testimony to this effect. It relied on its own expertise (most but not all Board members are dentists) and reached its decision based on its own review of the physical evidence. The superior court affirmed.

The Board argues that OCGA § 50-13-15 (4) authorized it to make this finding even without expert testimony. This statute provides: "Official notice may be taken of judicially cognizable facts. In addition, official notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence. . . ."

The concluding sentence does not authorize the Board to use its expertise to compensate for the absence of key evidence not presented or noticed. OCGA § 50-13-13 (a) (9) emphasizes that an agency's "[f]indings of fact shall be based exclusively on the evidence and on matters officially noticed."[30] If expert testimony is not

---

[30] See *Atlanta Gas Light Co. v. Ga. Pub. Svc. Comm.*, 152 Ga. App. 366, 373 (2) (262 SE2d 628) (1979) ("[a]n administrative agency must confine itself to the record before it and

presented, the Board cannot fill the void by silently inserting its own collective opinion, unexpressed and uncross-examined, as to the standard and by further inserting its judgment that the standard was not met. Official acknowledgment and use of technical or scientific facts may only follow appropriate notice as set forth in OCGA § 50-13-15 (4).

*Hicks v. Harden*,[31] a claim for disability, exemplifies these principles. Even though the only expert to appear testified that involutional depression was totally and permanently disabling, the agency itself found that involutional depression was " 'not a permanent disability since it begins around the time of menopause and should improve when menopause is completed. Also, this depression does not appear to be psychotic but simply neurotic and, therefore, is not totally disabling.' "[32] Citing OCGA § 50-13-15 (4), *Hicks* reversed the trial court (and thus the ALJ indirectly) on the ground that no prior notice of these contradictory facts was given and thus there was no opportunity to contest them.

Based on administrative procedure acts similar to Georgia's, a majority of courts in other jurisdictions that have addressed this issue have required expert testimony to establish the standard of care to which the professional is held and to test whether that professional's conduct fell below that standard.[33]

The South Dakota Supreme Court synthesized the law in this area in another dentistry case.[34] It stated: "These jurisdictions have advanced several reasons for requiring expert testimony in administrative hearings. Some have held that the due process protections of the Constitution require that the professional in danger of losing his license has the right to confront, cross-examine and rebut the witnesses' testimony and evidence sought to be placed in the record to

---

afford opportunity for showings contrary to material facts of which official notice has been taken") (citations and punctuation omitted).

[31] Supra, 133 Ga. App. at 789-790 (1).

[32] Id. at 789.

[33] See *Hake v. Arkansas State Med. Bd.*, 374 SW2d 173, 175-176 (Ark. 1964); *Franz v. Bd. of Med. Quality Assurance*, 642 P2d 792, 798-799 (Cal. 1982); *McKay v. State Bd. of Med. Examiners*, 86 P2d 232, 236 (Colo. 1938); *Woodfield v. Bd. of Professional Discipline &c. Idaho State Bd. of Medicine*, 905 P2d 1047, 1057 (Idaho App. 1995); *Smith v. Dept. of Registration &c.*, 106 NE2d 722, 729-731 (Ill. 1952); *Farney v. Anderson*, 372 NE2d 151, 152-154 (Ill. App. 1978); *Med. Licensing Bd. of Indiana v. Ward*, 449 NE2d 1129, 1141-1142 (Ind. App. 1983); *Arthurs v. Bd. of Registration in Medicine*, 418 NE2d 1236, 1244 (Mass. 1981); *New Jersey State Bd. of Optometrists v. Nemitz*, 90 A2d 740, 745-746 (N.J. Super. Ct. App. Div. 1952); *C. F. Braun & Co. v. Corp. Comm. &c. of Oklahoma*, 609 P2d 1268, 1272-1274 (Okla. 1980); *Rolfe v. Psychiatric Security Review Bd.*, 633 P2d 846, 851-853 (Or. App. 1981); *In re Schramm*, 414 NW2d 31, 35-37 (S.D. 1987); *Dotson v. Texas State Bd. of Med. Examiners*, 612 SW2d 921, 923-924 (Tex. 1981); *Gilbert v. State of Wisconsin, Med. Examining Bd.*, 349 NW2d 68, 81-82 (Wis. 1984).

[34] *In re Schramm*, supra.

establish his incompetence.

"A second rationale which also applies to this case is that the boards in many states are not totally comprised of professionals. Many of them contain lay members who are not trained in that particular profession. It has been held that it is improper for the Board to rely on its own expertise in determining competency rather than expert testimony on the record as some of the members do not hold this type of expertise. . . .

"The rationale most often relied upon by these jurisdictions is that expert testimony is required to be placed in the record to allow proper judicial review by appellate courts. When the administrative body applies its own expertise outside the hearing record to set the standard of care and a determination whether a professional violated it, the appellate courts, who are lawyers by training, lack the expertise to review findings of a board concerning medical, dental or any multitude of professions and occupations.

"This startling theory that the Board could use its own expertise without the evidentiary basis of that expertise appearing in the record, if recognized, would not only render absolute a finding opposed to uncontradicted testimony but would render the right of appeal completely inefficacious as well. A board of experts, sitting in a quasi-judicial capacity, cannot be silent witnesses as well as judges. The board may put its expertise to use in evaluating the complexities of technical evidence. However, the board may not use its expertise as a substitute for evidence in the record."[35]

Rejecting this analysis, a substantial minority of jurisdictions have allowed agency findings of negligence, without expert testimony, based solely on the expertise of the board members.[36] These jurisdictions find that the boards are best qualified by training and expertise to make determinations of competence and therefore expert testimony is unnecessary. But as the South Dakota Supreme Court stated: "The problem with this rationale is that it does not offer any explanation as to how an appellate court is to review the record which is absent of any expert testimony on the standards of the particular professions involved or their violation."[37]

The majority rationale being the sounder, we hold that "where the issues of competence and negligence are of a complicated nature, expert testimony is required to establish the proper competency stan-

---

[35] (Citations, punctuation and footnotes omitted.) Id. at 35-36.

[36] See *Croft v. Arizona State Bd. of Dental Examiners*, 755 P2d 1191, 1197 (Ariz. App. 1988); *Levinson v. Connecticut Bd. of Chiropractic Examiners*, 560 A2d 403, 411-415 (Conn. 1989); *Hebert v. Louisiana State Racing Comm.*, 476 S2d 823, 825 (La. App. 1985); *Leahy v. North Carolina Bd. of Nursing*, 488 SE2d 245, 248 (N.C. 1997); see also cases cited in *In re Schramm*, supra, 414 NW2d at 36.

[37] (Footnote omitted.) Id.

dards and whether or not they are met. To do otherwise would render this appellate court's review meaningless, as absent expert testimony, we cannot, by telepathy, act as mind readers determining from an empty record the factual determinations of the Board members. Administrative expertise would then be on its way to becoming a monster which rules with no practical limits on its discretion."[38] Of course, with appropriate notification technical and scientific facts may be judicially noticed.[39] Transparency is a crucial ingredient of due process.

At least two cases have reversed agency decisions for lack of evidence where the agency's expert was equivocal as to the standard of care or as to whether the accused professional complied with that standard.[40] We similarly hold that no evidence supports the Board's finding that Dr. Thebaut acted below the requisite standards. Thus there is no basis for sanctions or issuance of a letter of concern. The judgment is reversed and the case remanded to the trial court to reinstate the ALJ's initial decision.

4. This resolution moots the other enumerations of error raised by Dr. Thebaut.

*Judgment affirmed in Case No. A98A1131. Judgment reversed and remanded with direction in Case No. A98A1130. Pope, P. J., and Ruffin, J., concur and concur specially.*

RUFFIN, Judge, concurring specially.

I fully concur with the majority opinion. I write separately regarding Division 1 to address what I perceive to be a weakening of the mandatory nature of the word "shall."

Thebaut correctly notes that OCGA § 50-13-17 (c) requires that an agency *"shall* render a final decision . . . within 30 days after the close of the record." (Emphasis supplied.) It is a fundamental principle of statutory construction that "the ordinary signification shall be applied to all words" except words of art and trade words. OCGA § 1-3-1 (b). Ordinarily, "shall" connotes a command. See *State v. Henderson,* 263 Ga. 508, 510 (436 SE2d 209) (1993) ("must" and "shall" are synonymous); see also *In the Interest of R. D. F.,* 266 Ga. 294, 295 (466 SE2d 572) (1996) (OCGA § 15-11-26, which contains the word "shall," is construed to be mandatory); *Ga. Subsequent Injury Trust Fund v. ITT-Rayonier,* 198 Ga. App. 467 (402 SE2d 54) (1991) (the word "shall" in OCGA § 34-9-362 required compliance with time limitation); *Van Shallern v. Stanco,* 132 Ga. App. 794, 795 (209 SE2d 243) (1974) (Code Ann. § 61-302 containing word "shall" described as

---

[38] (Citations and punctuation omitted.) Id. at 36-37.

[39] OCGA § 50-13-15 (4).

[40] See *Franz,* supra, 642 P2d at 797; *Gilbert,* supra, 349 NW2d at 81-82.

"mandatory statutory provision").

Notwithstanding the generally accepted meaning of "shall," however, the Supreme Court of Georgia has carved out an exception for cases in which the word "shall" specifies a time period for the accomplishment of some action. "[W]hen not accompanied by any negative words restraining the doing of the thing afterward, [the word 'shall'] will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act." *Barton v. Atkinson*, 228 Ga. 733, 739 (1) (187 SE2d 835) (1972).

"Probably the most firmly established rule of statutory construction is the 'plain meaning rule.'" *Pittman v. State*, 133 Ga. App. 902, 905 (1) (212 SE2d 505) (1975). Since I believe the plain meaning of "shall" is "must," I am inclined to agree with Thebaut. Nevertheless, I am constrained by the precedent set forth in *Barton*, and, therefore, I specially concur.

I am authorized to state that Presiding Judge Pope joins in this special concurrence.

DECIDED NOVEMBER 10, 1998.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John K. Larkins, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Brenda H. Cole, Deputy Attorney General, Alan Gantzhorn, Senior Assistant Attorney General, Kristin R. Loecke, Assistant Attorney General*, for appellee.