17388

R. W. THOMAS et al., as Members of the Fairfield County School
District Board of Trustees, Appellants, v. L. P. HOLLIS et al.,
as Commissioners of The State Educational Finance
Commission, Respondents.

(102 S. E. (2d) 110)

*Messrs. Watson & McGuinn,* of Columbia, *for Appellants,*

*Messrs. T. C. Callison, Attorney General* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Respondents,*

February 11, 1958.

OXNER, Justice.

This action was brought by the Board of Trustees of the School District of Fairfield County against the State Edu-

cational Finance Commission to secure a writ of mandamus requiring the Commission to disburse funds to the credit of the District for the purpose of building a new high school. It was heard on the pleadings and an agreed statement of facts. The Court below refused to issue the writ and dismissed the petition.

In 1952, the six school districts of Fairfield County were consolidated into a single district and all powers and duties of the County Board of Education were vested in the Board of Trustees of The School District of Fairfield County. 47 St. at L. 2008. Shortly thereafter the Board of Trustees submitted to the Finance Commission a plan for new construction and facilities deemed necessary and desirable for the efficient operation of the public schools of the county, which included the erection of a new high school. The Commission appointed a committee to make a survey for the purpose of determining whether the plan submitted was in the best interest of the District and economically sound. A report was filed on August 21, 1952 wherein the committee recommended that the Mount Zion school building be retained for high school purposes and a new grammar school building erected. On February 5, 1953, the Board of Trustees decided to adhere to its decision to build a new high school and resubmitted a plan therefor to the Commission. The Commission held a hearing on this application for funds to build a new high school on July 2, 1953. A number of persons appeared in opposition to the proposed plan, contending that it would be better to renovate the Mount Zion school building and use it for an all county white high school. The Commission took no action.

During the following September the Director of the Commission suggested another survey to determine which of the two plans would be more feasible. A second committee was appointed by the Commission to make such survey and on November 9, 1953, made a report recommending that a new elementary school be constructed and the Mount Zion building renovated and retained as a high school, provided the

Mount Zion Society conveyed the legal title to this property to the School District. (Although the Mount Zion building had been used as a public school for a long period of years, it appears that the legal title was in the Mount Zion Society.) The Committee found that this plan would cost $236,740.00 less than that of building a new high school. The Board of Trustees then sought to have the Mount Zion Society convey the legal title to the School District. The Society refused to do so.

In March, 1954, the Director of the Finance Commission was requested to make funds available for renovation of the Mount Zion school building. The Commission refused this application, stating that its policy was not to approve the disbursement of funds for improvement of a building unless the District had fee-simple title.

Further efforts on the part of the Board of Trustees to obtain title from the Mount Zion Society being unsuccessful, it requested the Commission in February, 1955, to approve the plan for a new high school to be located outside of the limits of the Town of Winnsboro. The Commission took no definite action at that time but on December 8, 1955, approved the disbursement of funds for the purchase of a site for a new high school upon the condition that the Board of Trustees could not obtain title to the Mount Zion property. In January, 1956, an official of the Commission inspected a proposed site for the new high school which was different from the one for which funds had been approved in December. This official on March 14, 1956, approved the new site despite certain stated disadvantages. Meanwhile, the Board had entered into a contract to purchase the second site. On March 27, 1956, the Mount Zion Society offered to convey legal title to the School District provided the Mount Zion building was renovated and used for a new high school and a new elementary school built. In July, 1956, the Board of Trustees filed a supplementary application for $14,040.00 to be added to the $15,000.00 approved for the original site in December, 1955, to complete the cost of the new

site which was $29,040.00. No action was taken by the Finance Commission upon this supplemental application.

Conferences were had in May, 1956, between a committee of the Board and a committee of the Commission, at which the plans for a new high school were discussed. In June, 1956, the members of the Board of Trustees again appeared before the Commission urging that funds be provided for the whole project. At this meeting the protests of the group of private citizens were renewed and arguments made in opposition. The Commission suggested to the Board that in the interest of harmony an advisory referendum be held to give the people an opportunity to express their views. The Commission further suggested that prior to this referendum, reliable estimates be obtained as to the difference in the costs of the two plans. The Commission stated that, "no further consideration would be given, the Board's application at this time , pending the Board's reaction to the above suggestions."

On July 1, 1956, funds approved December 8, 1955, for the purchase of a site for a new high school were remitted by the Commission and the Board purchased the property.

Another meeting of the Finance Commission was held on October 11, 1956, which was attended by the Board of Trustees and a group of private citizens. Each side was permitted to make arguments. The Board of Trustees declined to hold a referendum, stating that it was its responsibility and not that of the people to decide on school sites and that no plan could be devised which would satisfy everyone, and reminded the Commission that it was its duty to either accept or reject the plan which the Board had submitted. The next day the Board was requested to submit a copy of its brief to counsel representing the private group who would be allowed twenty days in which to reply to the Board's argument. The Board was further informed that action on its application would be deferred until a later meeting. On October 20th the Board notified the Finance Commission that it would not comply with the request that counsel for

the private group be given a copy of its brief, stating that it was not going to occupy the role of a party litigant. On November 5, 1956, this proceeding in mandamus was instituted.

In the petition for mandamus the Board of Trustees alleged that they had submitted to the Commission a reasonably satisfactory plan for a new high school which the Commission had "accepted and approved" and that it was the duty of the Commission to disburse the necessary funds. In its answer the Commission denied having accepted or approved the plan submitted. It further alleged that the facts now before it do not show such plan to be economically feasible or for the best interest of the District and that it had requested, but not received, further information "in connection with the costs of the proposed project and the effect of the use of practically all funds available to Fairfied County for this one project, upon the rest of its school system."

We had occasion in *Edwards v. State Education Finance Commission,* 222 S. C. 433, 73 S. E. (2d) 456, to review the Act passed in 1951, 47 St. at L. 546, creating the State Educational Finance Commission, defining its duties, and making provision for the construction and financing of school buildings and other facilities. Under the terms of this Act, the Finance Commission is charged with the responsibility of disbursing funds provided by the General Assembly and is authorized to make surveys to determine the needs for new construction. Sections 21-56 and 21-57 of the Code of 1952. No grants accruing to a school district may be expended for any purpose unless such expenditure has been approved by the Commission, Section 21-277. In order to guide the Commission in passing upon requests for the use of grants, each county board of education is required to prepare a survey of necessary capital improvements, showing existing facilities, desirable consolidations, and new construction and physical facilities deemed necessary and desirable for the efficient operation of the schools of the county. Section 21-278. It is further provided in this

section: "The Commission may, in its discretion, deny all applications for the use of funds of the public school building fund from any county until such time as an acceptable and reasonably satisfactory plan, looking particularly to efficiency through consolidations of school districts, has been submitted by the county board of education and all applications from school districts or operating units shall conform to the plan of the county board of education." The Act contemplates that where the schools are operated as a county unit, applications for funds for building construction shall originate with the County Board. Sections 21-279 to 21-283, inclusive.

It is clear from the foregoing provisions that plans ██ for school construction must be approved by the Finance Commission which is empowered to deny any application deemed by it to be unsatisfactory. Appellants concede that the Commission is vested with wide discretionary powers in passing on applications. Their primary contention is that the Finance Commission approved the site recommended by it for the building of a new high school and thereby exercised and exhausted its discretion, leaving only a ministerial duty to disburse the funds. But the record does not disclose that the Commission has ever unconditionally approved the building of a new high school on the site purchased by the Board of Trustees. The approval in December, 1955, was not only for a different site but upon the condition that title could not be obtained to the Mount Zion property. In March, 1956, the Mount Zion Society offered to convey legal title to the District provided the building thereon was renovated and used for a new high school but the Board has continued to insist that the high school be erected on a new site. Evidently the Board considered that there had been no definite commitment by the Finance Commission for in its brief filed with the Commission on October 11, 1956, it requested the Commission "to indicate its approval or disapproval of its request and plan."

It is true that on July 1, 1956, the Commission authorized the disbursement of funds approved by it on December 8, 1955 for the purchase of a new site, but we cannot say from this record that the Commission thereby intended to irrevocably commit itself to erect a new high school on the new location. But even if this be construed as an approval, it is doubtful whether the Finance Commission would be precluded from withdrawing such approval. *Atlantic Coast Line R. R. Co. v. Railroad Commission,* 89 S. C. 472, 72 S. E. 18. We are not dealing here with private parties but with public agencies. The paramount consideration is the best interest of the School District.

It is next contended that the action of the Commission in refusing to approve the plan submitted by the Board of Trustees was arbitrary and capricious. Not only is this not alleged in the petition but the facts do not support this claim. The Commission directed two different surveys to determine whether the high school should be built on a new site or the Mount Zion school renovated and used for a high school. In each instance the Committee recommended the latter plan. The last Committee concluded that by using the Mount Zion building, there would be a saving of over $200,000.00.

Finally, it is suggested that in any event a writ should be issued to compel the Finance Commission to exercise its judgment by either approving or disapproving the plan submitted by the Board of Trustees. It is true that under proper circumstances mandamus may be used to compel an administrative agency to act by exercising its judgment or discretion. *State ex rel. Fouche v. Verner,* 30 S. C. 277, 9 S. E. 113; *Atlantic Coast Line Railroad Co. v. Railroad Commission, supra,* 89 S. C. 472, 72 S. E. 18; *City of Columbia v. Pearman,* 180 S. C. 296, 185 S. E. 747. But no such relief is sought in appellants' petition and this question was not passed upon by the Court below and is not raised by the exceptions.

In conclusion, it is proper to say that we find little, if any, justification for the failure of the Finance Commission for a period of approximately four years to take definite action on the plan submitted by the Board of Trustees. It is hoped that there will be no further delay.

Affirmed.

STUKES, C.J., and TAYOLR, LEGGE, and MOSS, JJ., concur.