S07A1128. CHARLES H. WESLEY EDUCATION FOUNDATION, INC. v. STATE ELECTION BOARD et al.

(654 SE2d 127)

CARLEY, Justice.

The Charles H. Wesley Education Foundation, Inc. (Appellant) is a non-profit corporation that has successfully litigated certain voter registration issues in federal court. *Charles H. Wesley Education Foundation v. Cox,* 324 FSupp2d 1358 (N.D. Ga. 2004), aff'd 408 F3d 1349 (11th Cir. 2005). On August 25, 2005, Appellant petitioned the State Elections Board for the promulgation of new voter registration rules.

> An interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. . . . Within 30 days after submission of a petition, the agency either shall deny the petition in writing, stating its reasons for the denial, or shall initiate rule-making proceedings in accordance with Code Section 50-13-4.

OCGA § 50-13-9. During a public meeting on September 14, 2005, at which the Board adopted certain previously announced amendments, it was discovered that the Board's staff and attorneys had inadvertently failed to forward Appellant's petition to Board members. However, the Board indicated that it would still review the petition.

About two months later, the Board had not yet taken any further action, and Appellant brought suit against the Board, its members, and the Secretary of State, who is its chairperson (Appellees). Appellant sought declaratory judgment and mandamus, alleging that Appellees had violated OCGA § 50-13-9, as well as certain state and federal constitutional requirements, by failing either to deny Appellant's petition within 30 days or to commence rule-making proceedings as specified in that statute. Appellees filed a motion to dismiss and subsequently renewed that motion, attaching an April 7, 2006 letter from their attorney to Appellant's counsel, stating that its petition had been rejected with the enactment of different rules, and setting forth reasons for that rejection. Ten days later, the trial court concluded that this letter rendered Appellant's claims moot. However, due to the likelihood of appeal, the trial court also considered the substance of those claims and dismissed the complaint. Appellant appeals from this order.

1. Appellant initially contends that the trial court erroneously failed to provide notice and reasonable opportunity to present evidence in opposition to the renewed motion and the letter attached thereto. Neither Appellant nor the dissent cites any authority that, upon submission and consideration of evidence with respect to the ground of mootness, a motion to dismiss must be converted into a motion for summary judgment. Nevertheless, a trial court generally should allow a party 30 days to respond to a motion and to any evidence submitted in support thereof. See Uniform Superior Court Rule 6.2. Compare *Garnett v. Murray*, 281 Ga. 506, 507 (1) (639 SE2d 475) (2007) (supplemental brief filed by movant did not extend time for response); *Dearing v. State of Ga.*, 243 Ga. App. 198, 203 (3) (532 SE2d 751) (2000) ("Where evidence is not required, a court has the discretion to rule on a motion to dismiss before the 30 days required by USCR 6.2 expires. [Cit.]"). However, even assuming that the trial court erred in that regard, dismissal of the complaint was nevertheless proper if it failed to state a claim upon which relief could be granted, as evidence was not required for the trial court to make that alternative determination. See OCGA § 9-11-12 (b) (6); *Evans v. Just Open Government*, 242 Ga. 834, 841 (7) (251 SE2d 546) (1979); *Dearing v. State of Ga.*, supra. Contrary to what the dissent argues, it is not necessary to construe the motion to dismiss as a motion for judgment on the pleadings, since the trial court has not entered a pre-trial order and, therefore, the pleadings are not, strictly speaking, "closed" within the meaning of OCGA § 9-11-12 (c). Richard C. Ruskell, *Davis and Shulman's Ga. Practice and Procedure* § 9:7, p. 500 (2007-2008 ed.).

2. The failure of the Board to act on Appellant's petition for the promulgation of rules within 30 days is not a valid basis for any legal

relief if the 30-day period of OCGA § 50-13-9 is merely directory rather than mandatory.

> A substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law.

OCGA § 1-3-1 (c). "This provision of statutory construction has been applied in many cases to statutes which provide that certain acts must be performed by public officials within specified periods of time. [Cits.]" *Clayton County v. Evans*, 258 Ga. 146, 147 (366 SE2d 282) (1988).

> So, this [C]ourt has held that language contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act. [Cits.]

*Barton v. Atkinson*, 228 Ga. 733, 739 (1) (187 SE2d 835) (1972). Compare *State v. Henderson*, 263 Ga. 508, 510, fn. 6 (436 SE2d 209) (1993) (recognizing a rejection of this proposition in cases construing the time requirements in the forfeiture statute). "[I]n such instances 'shall' denotes simple futurity rather than a command. [Cit.]" *Hardison v. Fayssoux*, 168 Ga. App. 398, 400 (309 SE2d 397) (1983).

The relevant language of OCGA § 50-13-9 states simply that, "[w]ithin 30 days after submission of a petition, the agency either shall deny the petition in writing, stating its reasons for the denial, or shall initiate rule-making proceedings . . . ." The initiation of rule-making proceedings is not a penalty for the failure to comply with the 30-day provision, but rather is one of the two possible alternative actions available to the agency which was requested to promulgate rules. Thus, OCGA § 50-13-9 is analogous to statutes which require that a final decision, either granting or denying an administrative application, be rendered within a certain period. See *Thebaut v. Ga. Bd. of Dentistry*, 235 Ga. App. 194 (1) (509 SE2d 125) (1998). Such provisions are generally directory unless there are additional negative words which prevent the agency from taking action after expiration of the time period. OCGA § 50-13-9 does not

state that, if action by the agency is not taken within 30 days, it is foreclosed or that a certain result will occur by operation of law. *Thebaut v. Ga. Bd. of Dentistry*, supra. Nor does that statute in any other manner expressly declare that a designated result will follow noncompliance or that the agency will cease to have authority to take specified action after 30 days. *Thebaut v. Ga. Bd. of Dentistry*, supra at 196 (1).

This Court has elaborated upon the final clause of the rule from *Barton* quoted above, holding as follows: " 'A statutory provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result.' " *Sanchez v. Walker County Dept. of Family & Children Services*, 237 Ga. 406, 410 (229 SE2d 66) (1976). We conclude that the substantial rights of those who request the promulgation of rules pursuant to OCGA § 50-13-9 will not be injured or prejudiced by delaying for more than 30 days the decision of whether to initiate rule-making proceedings. The precise beginning of the time line for undertaking such a complex administrative process as rule-making is not of the essence of the statutory right to petition for the commencement of that process. See *Barton v. Atkinson*, supra at 740 (1). Compare *Sanchez v. Walker County Dept. of Family & Children Services*, supra at 410-411 (failure to comply with notice and hearing requirements of juvenile code injured substantial rights of parent to possession of child and as a party to proceedings involving the child). Accordingly, the 30-day period set forth in OCGA § 50-13-9 is directory only, and not mandatory.

3. Appellant's amended complaint is completely dependent upon OCGA § 50-13-9. The theory of the complaint is that, because Appellees violated Appellant's rights by failing to act within 30 days, it is now entitled to the commencement of rule-making proceedings. However, Appellant does not have any such rights under the statute which, as discussed, imposes only a directory duty on Appellees. Furthermore, Appellant does not ever claim any constitutional right to action by Appellees which is independent of the statute. The mandamus claim seeks to compel the Board immediately to grant Appellant's petition and to commence rule-making proceedings. However, the Board clearly has the discretion to deny the petition instead, and is not required to make its determination prior to the expiration of 30 days. Therefore, Appellant's complaint has failed to set out a framework within which it could show that it has a clear legal right to have performed the "particular act" which it seeks to have enforced. *Clayton County v. Evans,* supra at 148; *Willis v. Dept. of Revenue,* 255 Ga. 649, 650 (2) (340 SE2d 591) (1986). Because "the

legislature vested the [A]ppellees with discretionary authority, a writ of mandamus will not lie. [Cits.]" *Smith v. Cofer*, 243 Ga. 530, 531 (255 SE2d 49) (1979).

4. In its claim for declaratory judgment, Appellant alleges that Appellees violated its rights by failing to deny its petition within 30 days or to institute rule-making proceedings, and that it is entitled to the immediate commencement of such proceedings. Again, however, the statutory 30-day period is not mandatory, and the Board is authorized to deny the petition after expiration of that time. Furthermore, Appellant's declaratory judgment claim, which was immediately followed in the complaint by requests for mandatory injunctive and mandamus relief,

> was not truly an action for declaratory judgment. "The distinctive characteristic of a declaratory judgment is that the declaration stands by itself and does not seek execution or performance by the defendant." [Cit.] A party may seek to invoke a court's declaratory power to "relieve the petitioner from uncertainty and insecurity with respect to [its] rights, status, and legal relations." [Cit.]

*Gelfand v. Gelfand*, 281 Ga. 40 (635 SE2d 770) (2006). As the trial court correctly concluded, however, it is "clear from reading [Appellant's] Amended Complaint and its Response Brief to [Appellees'] Motion to Dismiss that the only declaratory relief [it] wants is in the form of [mandatory] injunctive or mandamus relief." In other words, Appellant filed its petition seeking a declaration of rights "in order to compel" Appellees to institute rule-making proceedings immediately. *Gelfand v. Gelfand*, supra. Moreover, it is not the function of declaratory judgment to settle controversies and make binding declarations concerning mere directory provisions. See *City of Brunswick v. Anderson*, 204 Ga. 515 (1) (50 SE2d 337) (1948); *Hudon v. North Atlanta*, 108 Ga. App. 370, 371 (133 SE2d 58) (1963). "There must be in the controversy a legally protectible interest existing in virtue of some public law or ordinance. [Cits.]" *City of Brunswick v. Anderson*, supra. Where, as here, a statute which provides for the performance of a certain act by public officials within a specified period of time is directory, a trial court is not justified in declaring illegal a subsequent performance of that act. *North by Northwest Civic Assn. v. Cates*, 241 Ga. 39, 42-43 (2) (243 SE2d 32) (1978). Thus, the trial court here would not be justified in declaring illegal a denial of Appellant's petition by Appellees after the expiration of 30 days.

5. "Nevertheless, the agency should aggressively endeavor to meet the time allotted so as to fulfill the purpose expressed, which is to achieve expedition so as to serve the public's interest." *Thebaut v.*

*Ga. Bd. of Dentistry,* supra. Therefore, a petitioner under OCGA § 50-13-9 may be able to compel such agency to decide whether to deny the petition or to initiate rule-making proceedings. However, Appellant's complaint alleges that it is entitled to the commencement of rule-making proceedings and, thus, that Appellees no longer have the option of denying the petition. The dissent

> would require us to ignore the plain language of the com-
> plaint and to allow a theory of recovery entirely different
> from that which [Appellant] ha[s] claimed. A complaint
> must set forth the intended theory of recovery because there
> can be no recovery on a theory not alleged. [Cits.]

*Gomez v. Chao,* 239 Ga. App. 474, 475 (1) (521 SE2d 421) (1999). In accordance with our holding, that a petitioner under OCGA § 50-13-9 does not have any cause of action for the agency's failure to act within 30 days and cannot compel the agency to commence rule-making proceedings, the trial court correctly dismissed Appellant's com-
plaint.

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Hunstein, P. J., who dissent.*


SEARS, Chief Justice, dissenting.

I dissent. In my view, the Charles H. Wesley Education Founda-
tion, Inc. ("Wesley Foundation") followed precisely the correct proce-
dure to obtain a court order forcing a recalcitrant state administra-
tive agency to respond to a petition for rulemaking under the Georgia Administrative Procedure Act ("Georgia APA").[1] As the majority opinion tacitly concludes, it was error for the trial court to consider the April 7, 2006 letter from an attorney for the State Election Board ("Board") in deciding whether to grant the Board's motion to dismiss for failure to state a claim upon which relief can be granted under OCGA § 9-11-12 (b) (6).[2] Aside from this letter, there is nothing

---

[1] OCGA §§ 50-13-1 to 50-13-44.

[2] Technically speaking, the Board's motion was one for judgment on the pleadings rather than one to dismiss the complaint for failure to state a claim upon which relief can be granted because the Board had already filed an answer to the complaint. Compare OCGA § 9-11-12 (b) (6) with OCGA § 9-11-12 (c). See also OCGA § 9-11-12 (h) (2). In either case, when matters outside the pleadings, such as the April 7, 2006 letter, are presented to and not excluded by the trial court, the trial court must convert the motion to a motion for summary judgment and provide the parties with notice of the conversion and an opportunity to present all materials made relevant to a motion for summary judgment by OCGA § 9-11-56. OCGA § 9-11-12 (b), (c). Nevertheless, the same legal standard governs our review of orders granting both kinds of motions, *Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co.,* 287 Ga. App. 254 (651 SE2d 177) (2007); *Haldi v. Piedmont Nephrology Assocs., P.C.,* 283 Ga. App. 321, 321-322 (641 SE2d 298) (2007), and the majority opinion analyzes the order under consideration as one dismissing

whatsoever in the record, much less the amended complaint, to suggest that the Board has *ever* — even to this day — voted one way or the other on the Wesley Foundation's fall 2005 petition to initiate the rulemaking process. To the contrary, the Board admitted in its sworn pleadings that it did not make a final decision on the Wesley Foundation's petition at the September 14, 2005 public meeting and that its review was still "ongoing." Thus, the Wesley Foundation has now been waiting for over two years for a decision the General Assembly gave the Board only 30 days to make. The Court nonetheless concludes that the trial court properly dismissed the case at the pleadings stage. Under well established principles of administrative law and civil procedure, a civil action by the Wesley Foundation seeking both declaratory and mandamus relief was an appropriate procedural vehicle to obtain a ruling one way or the other from the Board on its petition for rulemaking. Accordingly, I would reverse the trial court's judgment dismissing the amended complaint.

## Standard of Review

1. We review de novo the trial court's grant of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.[3] To survive a motion to dismiss under OCGA § 9-11-12 (b) (6), the complaint need only set forth a "short and plain statement of the claims showing that the pleader is entitled to relief."[4] The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[5] In evaluating the sufficiency of the complaint,

> [i]t must be remembered that the objective of the [Civil Practice Act] is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.[6]

---

the amended complaint for failure to state a claim upon which relief can be granted under OCGA § 9-11-12 (b) (6). For the sake of simplicity, I will refer to the Board's motion and the resulting order of dismissal the same way.

[3] *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 284 Ga. App. 387, 387 (643 SE2d 864) (2007); *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 35 (643 SE2d 324) (2007).

[4] OCGA § 9-11-8 (a) (2) (A).

[5] *Conley v. Gibson*, 355 U. S. 41, 47 (78 SC 99, 2 LE2d 80) (1957).

[6] *Dillingham v. Doctors Clinic, P.A.*, 236 Ga. 302, 303 (223 SE2d 625) (1976); accord *West v. Sprayberry*, 247 Ga. 306, 307 (275 SE2d 654) (1981).

While the complaint need not include detailed factual allegations, it must contain more than a formulaic recitation of the elements of a legal cause of action.[7]

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court must assume the factual allegations of the complaint are true, even if they are doubtful in fact.[8] The Civil Practice Act "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."[9] The critical question is whether, under the assumed set of facts, a right to some form of legal relief would exist.[10] Thus, a complaint will not be dismissed under OCGA § 9-11-12 (b) (6) for requesting the wrong form of relief, or no relief at all, as long as the complainant is entitled to some legal remedy under the facts pled.[11]

## Facts and Procedural History

2. Taking the allegations of the complaint and all reasonable inferences drawn from them as true, the salient facts are as follows. On September 14, 2005, the Board met in public session to vote on several matters. One item on the calendar was the Board's own proposal to amend one subsection of Rule 183-1-6-.03, subsection (3) (o).[12] The Board's proposed revision of subsection (3) (o) had already progressed through the statutorily mandated notice and comment period required for the adoption, amendment, or repeal of an admin-

---

[7] *Bell Atlantic Corp. v. Twombly*, ___ U. S. ___, ___ (127 SC 1955, 167 LE2d 929) (2007); see also *Papasan v. Allain*, 478 U. S. 265, 286 (106 SC 2932, 92 LE2d 209) (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation").

[8] *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 679, n. 3 (523 SE2d 571) (1999); *Bell Atlantic Corp.*, supra, ___ U. S. at ___.

[9] *Neitzke v. Williams*, 490 U. S. 319, 327 (109 SC 1827, 104 LE2d 338) (1989). See *Scheuer v. Rhodes*, 416 U. S. 232, 236 (94 SC 1683, 40 LE2d 90) (1974) (well-pleaded complaint may proceed even if it appears that "a recovery is very remote and unlikely").

[10] *Allied Asphalt Co. v. Cumbie*, 134 Ga. App. 960, 962 (216 SE2d 659) (1975); accord *Kansas City, St. L. & C. R. Co. v. Alton R. Co.*, 124 F2d 780, 783 (7th Cir. 1941) (" 'The question is not whether the Plaintiff has asked for the proper remedy but whether under his pleadings he is entitled to any remedy.' [Cit.]").

[11] See OCGA § 9-11-54 (c) (1) ("Except as to a party against whom a judgment is entered by default, every final judgment *shall grant* the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings. . . .*") (emphasis supplied); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (3d ed. 2004) ("The sufficiency of a pleading is tested by the Rule 8 (a) (2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held. Thus, the selection of an improper remedy in the Rule 8 (a) (3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.") (footnotes omitted).

[12] See Ga. Comp. R. & Regs. 183-1-6-.03.

istrative rule.[13] The Wesley Foundation opposed the proposed amendment to subsection (3) (o), but at the meeting, the Board voted 4-1 to adopt it.

Another item on the calendar was the Wesley Foundation's petition requesting the Board to initiate a new round of rulemaking to rewrite Rule 183-1-6-.03 entirely. The Wesley Foundation's petition, as amended, set forth the complete text of a proposed new Rule 183-1-6-.03. However, when the Board took up the Wesley Foundation's petition at its September 14, 2005 public meeting, it quickly became apparent that none of the Board members had ever seen it, despite the fact that it had been properly filed with the Board's staff. All five Board members stated they had not yet seen the petition, and they promised to review it later and make a decision on it at that time.

OCGA § 50-13-9 gives state administrative agencies 30 days to consider and rule on a petition to initiate the rulemaking process for the adoption, amendment, or repeal of an administrative rule.[14] The agency can either grant or deny the petition. If the agency grants the petition, it must embark on the statutorily mandated notice and comment process.[15] However, to deny the petition, the agency need only put its decision in writing along with a statement of the reasons for the denial.

When 30 days passed after the September 14, 2005 public meeting with no further action by the Board on its rulemaking petition, the Wesley Foundation filed suit in the Fulton County Superior Court to force the Board to make a decision one way or the other.[16] In its October 17, 2005 complaint, the Wesley Foundation

---

[13] See OCGA § 50-13-4.

[14] OCGA § 50-13-9 provides in full as follows:

An interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. Each agency shall prescribe by rule the form for petitions and the procedure for their submission, consideration, and disposition. Within 30 days after submission of a petition, the agency either shall deny the petition in writing, stating its reasons for the denial, or shall initiate rule-making proceedings in accordance with Code Section 50-13-4.

It should be noted that, to date, the Board has failed to comply with the statutory requirement to adopt rules of practice governing the format, contents, and procedures for the presentation, consideration, and disposition of rulemaking petitions such as the one filed by the Wesley Foundation. OCGA § 50-13-3 (a) (2); see Ga. Comp. R. & Regs. 183-1-6-.03 to 183-2-11.01. Had the Board followed the statutory mandate by adopting clear procedures for the submission, consideration, and disposition of rulemaking petitions, the present controversy, culminating in two years of court proceedings, might have been avoided entirely.

[15] See OCGA § 50-13-4.

[16] It is fairly common in the administrative law context for agencies to ignore the statutory deadline and force interested parties to file suit to secure a response. William V. Luneburg, *Petitioning Federal Agencies for Rulemaking: An Overview of Administrative and Judicial Practice and Some Recommendations for Improvement*, 1988 Wis. L. Rev. 1, 15 (1988). See, e.g.,

requested a declaration that the Board's failure to respond to the petition within 30 days violated the Georgia APA and a writ of mandamus ordering the Board to either deny the petition in writing with the reasons stated or initiate the rulemaking process based on its proposal.

Thirty days later, the Board filed its sworn answer to the complaint. In it, the Board raised a host of technical defenses but admitted the central factual allegations of the complaint. Specifically, the Board admitted that it met on September 14, 2005, that it received the Wesley Foundation's petition to revamp Rule 183-1-6-.03 from beginning to end prior to the meeting, and that at the meeting, all five members of the Board publicly stated that they would review the Wesley Foundation's proposal at a later date. Critically, the Board admitted that as of November 17, 2005, the date of the filing of the answer, its review of the Wesley Foundation's petition was still "ongoing." Four months later, on March 10, 2006, the Board filed an answer to the Wesley Foundation's amended complaint. In it, the Board again conceded the essential allegations of the amended complaint and confirmed that as of March 10, 2006, its review of the Wesley Foundation's petition for rulemaking was still "ongoing."

In the four months between the filing of its first and second answers, the Board filed a December 29, 2005 motion to dismiss the complaint for failure to state a claim upon which relief can be granted, which it "renewed" on January 16, 2007, well over a year after the Board assured the Wesley Foundation at its September 14, 2005 public meeting that it would rule on its petition later.[17] The Board asserted — contrary to its sworn answers both before and after the fact — that it had, in fact, denied the Wesley Foundation's petition for rulemaking at the September 14, 2005 public meeting. As proof, the Board included a letter dated April 7, 2006, from one of the Board's attorneys to the Wesley Foundation stating that the petition for rulemaking had been denied at the September 14, 2005 public meeting and that the reasons for the denial were provided then.

---

*Maine v. Thomas*, 874 F2d 883, 885 (1st Cir. 1989) ("EPA played the laggard. It was not until after it had been sued for recalcitrance and entered a settlement and consent decree that it issued regulations.") (footnote omitted). Doing so has the effect of automatically extending the deadline to act for at least a month until an answer is due, and often much longer, as this case well demonstrates. The tactic rarely results in any serious adverse consequences for the agency, for as the majority opinion has so cogently explained, as long as the agency takes action prior to trial, its belated performance will generally be deemed to constitute substantial compliance with the statute, and the lawsuit will be dismissed as moot. See, e.g., *In re City of Fall River, Mass.*, 470 F3d 30, 32 (1st Cir. 2006).

[17] As explained above, technically speaking, both the original motion and the "renewed" motion were actually motions for judgment on the pleadings under OCGA § 9-11-12 (c).

Ten days later, on January 26, 2007, the trial court granted the Board's "renewed" motion to dismiss. The trial court opined that the September 14, 2005 public meeting "was arguably sufficient" to comply with the statutory requirement that the Board either initiate a new round of rulemaking based on the petition or deny the petition in writing stating the reasons for the denial. The trial court further concluded that even if the Board's actions at the September 14, 2005 public meeting did not satisfy the requirements of OCGA § 50-13-9, the April 7, 2006 letter from the Board's attorney to the Wesley Foundation constituted a written denial of the petition with reasons stated. Accordingly, the trial court held that the Wesley Foundation's claims for declaratory judgment and a writ of mandamus were moot, because the Board had already taken final action on its petition for rulemaking. The trial court further held that the amended complaint should be dismissed because it did not plead with specificity how the Wesley Foundation's rights had been violated by the Board's actions,[18] and because the Wesley Foundation was not entitled to have the Board adopt its proposed overhauled version of Rule 183-1-6-.03. The Wesley Foundation appealed.

## The Wesley Foundation's Petition to Amend Rule 183-1-6-.03

3. The basis for the Wesley Foundation's claim for relief is straightforward. The Wesley Foundation contends that the Board has, for more than two years now, steadfastly refused to make a final decision on its petition for rulemaking as required by OCGA § 50-13-9. OCGA § 50-13-9 expressly grants interested persons[19] a statutory right to petition state agencies for the promulgation, amendment, and repeal of administrative rules and regulations. The statute also grants interested parties a right to a decision by the agency within 30 days.[20] If the agency denies the petition, it must do so in writing and state the reasons for the denial.[21] The agency's final

---

[18] The injury to the Wesley Foundation caused by the Board's failure to act on its petition for rulemaking is not one of the things that OCGA § 9-11-9 requires to be pled with particularity. See OCGA § 9-11-9 (b) (requiring circumstances constituting fraud or mistake to be pled with particularity), (g) (same for items of special damage).

[19] The Board does not dispute that the Wesley Foundation qualifies as an "interested person" under OCGA § 50-13-9.

[20] OCGA § 50-13-9. See 1 Richard J. Pierce, Jr., *Administrative Law Treatise* § 6:10, at 388 (4th ed. 2002) ("At a minimum, the right to petition for rulemaking entitles a petitioning party to a response to the merits of the petition.").

[21] OCGA § 50-13-9. See 1 Charles H. Koch, Jr., *Administrative Law and Practice* § 4.31 (2d ed. 1997) ("A citizen has the right to petition the agency for rulemaking. . . . A corollary of this right is the right . . . to receive reasons for a denial of a petition."); 32 Charles H. Koch, Jr., *Federal Practice and Procedure* § 8172, at 193-194 (2006) ("A citizen has the right to petition the

decision denying the petition is subject to judicial review.[22] The Wesley Foundation exercised its statutory right to file a rulemaking petition, but the Board has refused to fulfill its statutory obligation to grant or deny it, not just within 30 days, but at all. As a result, the Board has thus far successfully deprived the Wesley Foundation of the ability to obtain judicial review of the Board's de facto denial of its rulemaking petition.[23] The Court nevertheless holds that dismissal of the Wesley Foundation's lawsuit at the pleadings stage was proper. However, the Court's reasoning is flawed, and the likely effect of its decision will be to significantly undermine the Georgia APA.

First, the doctrine of substantial compliance and the distinction between "mandatory" statutory deadlines versus those that are "merely directory" has no application where, as here, a state administrative agency has not yet made the decision entrusted to it by the statute. This is not a case where an agency made a belated decision and the plaintiff's only complaint is that it did so after the statutory deadline had passed. Instead, the Wesley Foundation alleges that the Board has never ruled on its petition. Where a statute requires an agency to do one of two things, but the agency has refused to do either of them, the agency cannot claim that it has substantially complied with the requirements of the statute.

The only thing in the record that suggests the Board has ever acted on the Wesley Foundation's rulemaking petition is the April 7, 2006 letter purportedly from the Board's counsel. As noted above, this letter cannot be considered in deciding whether the trial court properly dismissed the amended complaint for failure to state a claim upon which relief can be granted. More importantly, it directly contradicts the amended complaint's allegations, which we must take as true, that the Board did *not* deny the rulemaking petition at its September 14, 2005 public meeting and has not done so since.[24]

---

agency for rulemaking. The APA provides both the right to petition and the right to receive reasons for the denial of the petition.").

[22] *Massachusetts v. E.P.A.,* ___ U. S. ___, ___ (127 SC 1438, 167 LE2d 248) (2007) ("Refusals to promulgate rules are thus susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'"); *Marshall County Health Care Auth. v. Shalala,* 988 F2d 1221, 1224 (D.C. Cir. 1993) ("And a refusal to engage in rulemaking is, of course, reviewable under the Administrative Procedure Act (APA).").

[23] See 3 Charles H. Koch, Jr., *Administrative Law and Practice* § 12.52 (2d ed. 1997) ("Delay is not the exercise of discretion or any other type of decisionmaking but rather is the result of agency failures. The challenge of delay is tantamount to a charge of breach of duty. While there are many practical excuses for delay, delay must be justified. Where the delay is unjustified or contrary to statute, it should be reviewed at least for arbitrariness. . . . Of course, where the statute provides a deadline, a court has authority to hold the agency to that deadline.").

[24] The April 7, 2006 letter cannot, in and of itself, satisfy the requirements of OCGA § 50-13-9. A staff member, even an attorney, cannot usurp the Board's exclusive authority over

Second, the majority opinion is mistaken in its claim that dismissal is appropriate because the Wesley Foundation is not entitled to the two forms of relief requested in the amended complaint, a declaratory judgment and a writ of mandamus. The amended complaint does, in overreaching fashion, ask the trial court to order the Board to commence the rulemaking process based on the Wesley Foundation's proposal, and the majority opinion is certainly correct in holding that the Wesley Foundation has no right to such an order, at least at this stage of the proceedings. However, the relevant question at the motion to dismiss stage is not whether the particular form of relief requested in the complaint is legally available, but rather whether the complaint states a claim upon which some form of legal relief *can* be granted.[25]

If the allegations of the amended complaint are true — i.e., if the Board has never voted on the Wesley Foundation's petition at all — then the law does authorize relief under both Georgia's version of the Uniform Declaratory Judgments Act[26] and the statutes authorizing the issuance of writs of mandamus.[27] A lawsuit to obtain a judicial declaration of one's rights under a statute such as OCGA § 50-13-9 is a paradigmatic example of the proper use of the declaratory judgment procedure.[28] The Georgia APA expressly authorizes the filing of a declaratory judgment action challenging the validity of a rule or seeking an authoritative construction of a rule. Nothing in the Georgia APA or the declaratory judgments statute suggests the same procedure cannot be employed to secure a ruling that an agency has unlawfully withheld action on a rulemaking petition. The Court's broad statement that a declaratory judgment action cannot be used to settle controversies involving "mere directory" provisions rests on two cases that are easily distinguishable from the present controversy.[29]

---

rulemaking. Under the Georgia APA, the Board itself is required to decide the fate of the Wesley Foundation's petition for rulemaking.

[25] OCGA § 9-11-12 (b) (6).

[26] OCGA §§ 9-4-1 to 9-4-10. See *Williams v. Kaylor*, 218 Ga. 576, 577 (129 SE2d 791) (1963) ("The declaratory judgments law, contained in the Acts of 1945 (Ga. L. 1945, p. 137) and amended by subsequent acts (Ga. L. 1959, pp. 236, 237), is the uniform declaratory judgments act adopted by most of the states of the Union.").

[27] OCGA §§ 9-6-20 to 9-6-28.

[28] OCGA § 9-4-1 ("The purpose of this chapter is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . .").

[29] The cases cited by the majority opinion in support of this statement are not on point. The first case involved a controversy over the "mere privilege" of a license to carry on a taxicab business in the city. *City of Brunswick v. Anderson*, 204 Ga. 515, 515 (1) (50 SE2d 337) (1948). The second involved a controversy over the "mere privilege" of selling malt beverages in the city. *Hudon v. North Atlanta*, 108 Ga. App. 370, 371 (133 SE2d 58) (1963). By contrast, OCGA

The allegations of the amended complaint, if true, would also warrant the issuance of a writ of mandamus. A writ of mandamus will issue to compel the performance of an official duty.[30] The Georgia APA vests the Board with discretion to either grant or deny the Wesley Foundation's petition for rulemaking. It does not give the Board discretion to do nothing at all. While the courts may not issue a writ of mandamus compelling the Board to decide the petition a certain way, they can certainly order the Board to make a decision one way or the other as required by OCGA § 50-13-9.[31]

The Court exhorts administrative agencies to "aggressively endeavor" to comply with the General Assembly's order to respond to rulemaking petitions within 30 days while at the same time removing a critical incentive for them to do so, namely, judicial oversight. The practical effect of the Court's ruling will be to expand exponentially, if not eliminate entirely, the 30-day deadline the General Assembly set for state administrative agencies to make the threshold determination of whether or not they want to enter an area through the rulemaking process at a particular time. No longer will interested parties be able to force state agencies to make a decision on a petition for rulemaking, albeit a belated one, by filing a complaint for declaratory relief and mandamus as soon as the statutory deadline for action has passed. After today's decision, doing so will result only in swift dismissal of the complaint under OCGA § 9-11-12 (b) (6). Agencies will not even have to go through the motions of preparing and filing an answer to justify their failure to fulfill the statutory mandate. Instead, they can simply ignore rulemaking petitions, secure in the knowledge that they will never be called to task by the courts for doing so. This result is the antithesis of what the General Assembly sought to achieve by enacting the Georgia APA and OCGA § 50-13-9. Accordingly, I dissent.

I am authorized to state that Presiding Justice Hunstein joins in this dissent.

DECIDED NOVEMBER 21, 2007.

*Bradley E. Heard*, for appellant.

---

§ 50-13-9 gives the Wesley Foundation a statutory right to a decision on its rulemaking petition, not a mere legal privilege that the Board is free to bestow or withhold in its sole discretion.

[30] OCGA § 9-6-20; *Hilton Constr. Co. v. Rockdale County Bd. of Ed.*, 245 Ga. 533, 540 (266 SE2d 157) (1980) ("Mandamus is the remedy for inaction of a public official.").

[31] See *Common Cause of Mont. v. Argenbright*, 917 P2d 425, 431 (Mont. 1996) ("[M]andamus may issue to require the exercise of permissible discretion, . . . although the manner in which the discretionary act is to be performed is not to be directed by the Court. [Cit.]") (alteration in original); *Thomas v. Hollis*, 102 SE2d 110, 114 (S.C. 1958) ("[M]andamus may be used to compel an administrative agency to act by exercising its judgment or discretion.").

*Thurbert E. Baker, Attorney General, Julia B. Anderson, Assistant Attorney General,* for appellee.