**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 12, 2024**

# In the Court of Appeals of Georgia

A23A1690. CLARK v. THE STATE.

HODGES, Judge.

This case requires that we examine the evolution of OCGA § 17-10-1 (a) (1) (B)'s early probation termination procedures. In March 2023, Marvante Clark filed a motion to terminate the remainder of a sentence of probation imposed in February 2018. See OCGA § 17-10-1 (a) (1) (B) (2021). The Superior Court of Henry County denied Clark's motion, and Clark appeals, arguing that the trial court misapplied OCGA § 17-10-1 (a) (1) (B) (i) in a directory, rather than a mandatory, manner. For the following reasons, we affirm.

"Statutory interpretation is a question of law, which we review de novo, giving no deference to the trial court's ruling." *In the Interest of H. P.*, 368 Ga. App. 222, 223

(1) (889 SE2d 408) (2023). Here, the record demonstrates that Clark entered a guilty plea on February 12, 2018 to one count each of burglary, theft by receiving stolen property, possession of cocaine, misdemeanor obstruction of an officer, and possession of marijuana (less than one ounce). The trial court sentenced Clark as a first offender to a total of ten years to serve one year in confinement.

In January 2023, the State procured an arrest warrant for Clark based upon an alleged probation violation of committing a new offense of theft by receiving stolen property. Clark filed a motion to terminate his probation in March 2023, asserting that his probation "should have terminated as a matter of law" on February 12, 2021, pursuant to OCGA § 17-10-1 (a) (1) (B).[1] During a hearing on Clark's motion, the trial court noted that "the [behavioral incentive] date triggers a procedure, but the [behavioral incentive] date by itself doesn't terminate [probation]. And because we don't have a termination, and then we have a violation, then we have a situation where the probation continues to move forward." The trial court added that, "based upon the circumstances of this case," the lack of a termination would be "in the best

---

[1] The trial court's sentencing order did not include a behavioral incentive date because, as will be explained more fully herein, the early probation termination procedures of OCGA § 17-10-1 (a) (1) (B) did not apply to Clark at the time of his sentencing.

2

interest of justice and the welfare of society." Thereafter, the trial court's written order cited OCGA § 17-10-1 (a) (1) (B) (2021) and found that the Department of Community Supervision ("DCS")[2] did not provide an order to terminate Clark's probation to the court, but denied Clark's motion based, at least in part, on "OCGA § 17-10-1 (a) (1) (B) (ii) ('The court shall take whatever action it determines would be for the best interest of justice and the welfare of society.')." This appeal follows.

In a single enumeration of error, Clark contends that the trial court erred in denying his motion to terminate probation where DCS failed to present an order to terminate his probation following the retroactive application of the behavioral incentive date under OCGA § 17-10-1 (a) (1) (B) (i). Stated differently, Clark asserts that the DCS was required to notify the State and the trial court of Clark's successful completion of three years' probation and that, in the absence of such notice, his probation terminated as a matter of law. We are not persuaded.

---

[2] See OCGA § 42-3-3 (a) (1) - (2) (providing for the creation of "the Department of Community Supervision" and that "DCS shall be the agency primarily responsible for: (1) [s]upervision of all defendants who receive a felony sentence of straight probation; [and] (2) [s]upervision of all defendants who receive a split sentence[.] . . .").

(a) *Retroactivity*. When OCGA § 17-10-1 (a) (1) (B) originally became effective on July 1, 2017, it did not apply to probationers sentenced as first offenders. See OCGA § 17-10-1 (a) (1) (B) (2017); see also *Mays v. State*, 345 Ga. App. 562, 564-565 (814 SE2d 418) (2018) (holding that OCGA § 17-10-1 (a) (1) (B) did not apply because defendant entered a guilty plea and was sentenced as a first offender, and "a first offender's guilty plea does not constitute a 'conviction'") (citation and emphasis omitted). A subsequent amendment, effective July 1, 2018, made subparagraph (B) applicable to first offenders. See OCGA § 17-10-1 (a) (1) (B) (2018); see also *Pitts v. State*, 357 Ga. App. 299, 302 (2) (850 SE2d 486) (2020) (recognizing that OCGA § 17-10-1 (a) (1) (B) applied to first offenders only after the 2018 amendment). Therefore, at the time the trial court sentenced Clark as a first offender on February 12, 2018, the early termination provisions of OCGA § 17-10-1 (a) (1) (B) were not available to him. See *Mays*, 345 Ga. App. at 564-565.

However, the most recent amendment, effective May 3, 2021, gave the statute retroactive effect. See Ga. L. 2021, p. 223, § 1; OCGA § 17-10-1 (a) (1) (B) (ii) (2021). In that vein, the current version of OCGA § 17-10-1 (a) (1) (B) (ii) provides that subparagraph (B)

is intended to be retroactive and shall be applied to *any case* in which a person with no prior felony conviction was convicted of felony offenses or was charged with felony offenses and was sentenced pursuant to subsection (a) or (c) of Code Section 16-13-2 or Article 3 of Chapter 8 of Title 42, and the court imposed a sentence of probation or a sentence of not more than 12 months of imprisonment followed by a term of probation. A behavioral incentive date shall as a matter of law be included in the sentencing order, but in a case where it was not, the behavioral incentive date shall be three years from the date such sentence was imposed.

(Emphasis supplied.)

Clark highlights the fact that DCS did not notify the State or the trial court that he satisfied the statutory requirements to attain early termination of his probation on February 12, 2021. However, the early termination provisions of OCGA § 17-10-1 (a) (1) (B) did not apply to Clark at that time because the statute was not yet retroactive. See generally *Stubbs v. Hall*, 308 Ga. 354, 368 (4), n. 17 (840 SE2d 407) (2020) ("Laws prescribe for the future. Unless a statute, either expressly or by necessary implication, shows that the General Assembly intended that it operate retroactively, it will be given only prospective application.") (citation and punctuation omitted). It

was not until the addition of OCGA § 17-10-1 (a) (1) (B) (ii), effective May 3, 2021, that the early termination procedure retroactively applied to Clark.

Accordingly, it is clear that, under the plain language of OCGA § 17-10-1 (a) (1) (B) as it has been amended, the provisions of OCGA § 17-10-1 (a) (1) (B) are now *generally available* to Clark. Whether Clark is entitled to *benefit* from those provisions is our next inquiry.

(b) *Applicability*. OCGA § 17-10-1 (a) (1) (B) (i) states that

[w]hen a defendant with no prior felony conviction is convicted of felony offenses or is charged with felony offenses and is sentenced pursuant to subsection (a) or (c) of Code Section 16-13-2 or Article 3 of Chapter 8 of Title 42, and the court imposes a sentence of probation or not more than 12 months of imprisonment followed by a term of probation, the court shall include a behavioral incentive date in its sentencing order that does not exceed three years from the date such sentence is imposed. Within 60 days of the expiration of such incentive date, if the defendant has (1) paid all restitution owed; (2) not had his or her probation revoked in the immediately preceding 24 months, or when the court includes a behavioral incentive date less than two years from the date a sentence was imposed, not had his or her probation revoked during such period; and (3) not been arrested for anything other than a nonserious traffic

offense as defined in Code Section 35-3-37,[3] the Department of Community Supervision *shall* notify the prosecuting attorney and the court of such facts. The Department of Community Supervision *shall* provide the court with an order to terminate such defendant's probation which the court *shall* execute unless the court or the prosecuting attorney requests a hearing on such matter within 30 days of the receipt of such order. The court shall set the matter for a hearing as soon as possible but not more than 90 days after receiving the order to terminate. The court shall take whatever action it determines would be for the best interest of justice and the welfare of society.

(Emphasis supplied.)

Of course, it is well-settled that, in matters of statutory construction, our courts

presume that the General Assembly meant what it said and said what it meant. Accordingly, we afford the statutory text its plain and ordinary meaning, viewing the statutory text in the context in which it appears, and reading the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. When, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself.[4]

---

[3] At the hearing on Clark's motion to terminate probation, the State conceded that Clark satisfied the requirements of OCGA § 17-10-1 (a) (1) (B) (i) and was "eligible" for potential termination.

[4] As a result, Clark's extended focus on legislative summaries and "[a] brief review of the historical reasons for the creation of OCGA § 17-10-1 (a) (1) (B)" in his

(Citation and punctuation omitted.) *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021).

Application of the statute, and, thus, the manner in which Clark may benefit from it, initially turns upon the use of the word "shall." "'Shall' is generally construed as a word of command." *Mead v. Sheffield*, 278 Ga. 268, 269 (601 SE2d 99) (2004); see also *Lewis v. State*, 283 Ga. 191, 194 (3) (657 SE2d 854) (2008) ("for the purposes of statutory construction, the word 'shall' is to be generally construed as a mandatory directive"). However, it need not always be so. See *Lewis*, 283 Ga. at 194-195 (3). "[L]anguage contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, *when not accompanied by any negative words restraining the doing of the thing afterward*, will generally be construed as merely directory and not as a limitation of authority[.]" (Citation and punctuation omitted; emphasis supplied.) *Charles H. Wesley Ed. Foundation v. State Election Bd.*, 282 Ga. 707, 709 (2) (654 SE2d 127) (2007); see also *Sanchez v. Walker County Dept. of Family & Children Svcs.*, 237 Ga. 406, 410 (229 SE2d 66) (1976) ("A statutory

---

appellant's brief is irrelevant. See *In the Interest of H. P.*, 368 Ga. App. at 224 (1) ("the search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous, the search also must end there") (citation and punctuation omitted).

provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result.") (citation and punctuation omitted), disapproved of on other grounds, *In the Interest of R. D. F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996).

Here, our statutory rules of construction confirm that OCGA § 17-10-1 (a) (1) (B) is directory rather than mandatory. First, OCGA § 17-10-1 (a) (1) (B) does not contain any negative words which would prevent DCS from sending notice of a probationer's status outside the 60-day window prescribed by the statute. See *Charles H. Wesley Ed. Foundation*, 282 Ga. at 709-710 (2). Second, "[n]or does [OCGA § 17-10-1 (a) (1) (B)] in any other manner expressly declare that a designated result will follow noncompliance or that the agency will cease to have authority to take specified action after [60] days."[5] Id. at 710 (2). Third, and finally, even assuming a lack of

---

[5] Consistent with these authorities, the window during which DCS could have timely provided notice to the State and the trial court opened May 3, 2021 (the effective date of OCGA § 17-10-1 (a) (1) (B) (ii)) and conceivably, though not permanently, closed July 2, 2021 (60 days after the early termination procedures became effective and available to Clark). See OCGA § 17-10-1 (a) (1) (B) ("Within 60 days of the expiration of such incentive date, . . . the Department of Community Supervision *shall* notify the prosecuting attorney and the court of . . . facts [supporting a probationer's early termination].") (emphasis supplied).

performance by DCS, i.e., that it did not provide the prescribed notice within the 60-day window, probation is viewed generally as a matter of judicial grace since there is no substantial right to receive a probated sentence. See OCGA § 17-10-1 (a) (1) (A) (providing that sentencing judge "is granted power and authority to suspend or probate all or any part of the entire sentence[,]" including "the authority to revoke the suspension or probation when the defendant has violated any of the rules and regulations prescribed by the court, even before the probationary period has begun"); *Postell v. Humphrey*, 278 Ga. 651, 654 (604 SE2d 517) (2004); *Goode v. Nobles*, 271 Ga. 30, 31 (518 SE2d 122) (1999). As a result, a failure by DCS to provide notice within the 60-day window "will result in no injury or prejudice to the substantial rights of interested persons[.]" (Citation and punctuation omitted.) *Sanchez*, 237 Ga. at 410 (holding that "[a] failure to comply with notice and hearing requirements of the juvenile code after an allegedly deprived child has been taken from the parent's custody *does* prejudice or injure the rights of the parent, primarily the right to possession of the child") (emphasis supplied).

It is undisputed that DCS did not provide notice, at this time or at any other time, to the State and the trial court of the status of Clark's probation as directed by

OCGA § 17-10-1 (a) (1) (B) (i). Establishing that fact, however, does not resolve this case.

(c) *Remedy*. In view of DCS's failure to provide notice as contemplated by OCGA § 17-10-1 (a) (1) (B) (i), Clark contends that his probation stands "terminated as a matter of law[.]" Clark offers no authority to support this specific remedy. In contrast, and as we have noted, OCGA § 17-10-1 (a) (1) (B) is directory in nature, due in large part to the absence of any negative words stating that DCS "is foreclosed or that a certain result will occur *by operation of law*" if DCS does not provide notice to the State and the trial court within the 60-day time period. (Emphasis supplied.) *Charles H. Wesley Ed. Foundation*, 282 Ga. at 710 (2).

Importantly, and as the trial court correctly noted, DCS's notice to the State and the trial court during the 60-day window merely triggers a procedure that, in part, requires DCS to submit an order terminating probation "which the court shall execute *unless* the court or the prosecuting attorney requests a hearing on such matter within 30 days of the receipt of such order." (Emphasis supplied.) OCGA § 17-10-1 (a) (1) (B) (i). Similarly, OCGA § 17-10-1 (a) (1) (B) (i) grants the trial court the overarching discretion to "take whatever action it determines would be for the best interest of

11

justice and the welfare of society" once notice and an order of termination have been presented by DCS, regardless of whether the State requests a hearing. As a result, the statute makes clear that termination of probation is not automatic even if DCS complied with its initial duty to provide notice to the State and the trial court.

What we are left with, then, is the circumstance present in this case — when DCS does not provide notice to the State and the trial court, and the probationer does nothing to timely enforce DCS's responsibility. The trial court originally sentenced Clark to a term of ten years to serve one year in confinement. Between May 3, 2021, when OCGA § 17-10-1 (a) (1) (B) became retroactive, and January 25, 2023, when the State secured a probation violation arrest warrant against Clark, the record does not demonstrate any attempt by Clark to contact DCS concerning its responsibility to provide notice to the State and the trial court of the status of his probation. Therefore, absent any modification, early termination, or other intervening factor, Clark's original sentence remained in force.[6]

---

[6] Clark is not, as he claims, without recourse. If DCS fails to provide notice to the State and the trial court during the 60-day window provided by OCGA § 17-10-1 (a) (1) (B) (i), a panoply of both formal and informal potential remedies are open to probationers, ranging from letters and telephone calls alerting DCS of a possible oversight to petitions for mandamus prodding a hostile or intransigent DCS official.

Notwithstanding the fact that DCS failed to provide notice in this case, which would have then allowed either the State to request a hearing or the trial court to schedule a hearing on its own, the trial court conducted such a hearing. At the conclusion of the hearing, during which Clark was afforded the opportunity to be heard, the trial court determined that, "based upon the circumstances of this case," the lack of a termination would be "in the best interest of justice and the welfare of society." The trial court's written order cited OCGA § 17-10-1 (a) (1) (B) (2021) and, specifically, its inherent discretion and denied Clark's motion based on "OCGA § 17-10-1 (a) (1) (B) (ii) ('The court shall take whatever action it determines would be for the best interest of justice and the welfare of society.')." In short, the termination of probation was not automatic, and Clark received more than that to which he was entitled. As a result, we find no error.

In sum, we conclude that OCGA § 17-10-1 (a) (1) (B) (i) applied retroactively to Clark's February 2018 guilty plea and ensuing split sentence under the First Offender Act. We further conclude that OCGA § 17-10-1 (a) (1) (B) (i) is directory, rather than mandatory, and that the failure of DCS to provide notice of a probationer's status to the State and the trial court does not result in the automatic

termination of a probated sentence. In addition, in the absence of any timely action by a probationer or other party, the probationer's sentence continues uninterrupted despite the lack of notice by DCS contemplated by OCGA § 17-10-1 (a) (1) (B). Finally, OCGA § 17-10-1 (a) (1) (B) (i) grants a trial court discretion to "take whatever action it determines would be for the best interest of justice and the welfare of society." Because the trial court correctly applied these principles when it denied Clark's motion to terminate probation, we affirm the court's order.

*Judgment affirmed. Miller, P. J., concurs; and Mercier, C. J., concurs in judgment only.*